# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

*In re* COH, ERH, JRG, & KBH, MINORS

Docket No. 147515. Argued December 10, 2013 (Calendar No. 2). Decided April 22, 2014.

The Department of Human Services (DHS) petitioned the Muskegon Circuit Court, Family Division, to terminate the parental rights of the mother and two fathers of the minor children COH, ERH, JRG, and KBH, who had been removed from the mother's home and placed in foster care. At the dispositional hearing, Lori Scribner, the biological grandmother of three of the children, submitted a letter expressing interest in becoming all four children's guardian if they were not returned to their mother. The court concluded that terminating the mother's rights was not in the children's best interests, although it granted the petition with respect to the fathers. The following year, the DHS again petitioned to terminate the mother's parental rights. The mother pleaded no contest to the allegations in the petition, and Scribner moved to be appointed the children's guardian under MCL 712.19c and MCR 3.979. The court, William C. Marietti, J., denied Scribner's motion after considering the best-interest factors from the Child Custody Act, MCL 722.21 *et seq.*, and admitted the children to the Michigan Children's Institute (MCI) under MCL 400.203. Scribner requested consent from the MCI superintendent to adopt the children, but the superintendent denied it, and the trial court denied Scribner's motion to reverse the denial. Scribner appealed both this decision and the order denying her petition for guardianship. After consolidating the appeals, the Court of Appeals, TALBOT, P.J., and MARKEY and RIORDAN, JJ., reversed the order denying Scribner's petition for guardianship in an unpublished opinion per curiam issued June 25, 2013 (Docket Nos. 309161 and 312691) and remanded for the entry of an order appointing Scribner guardian. The Supreme Court granted the DHS's application for leave to appeal. 495 Mich 870 (2013).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

The preference created in MCL 722.954a for a child who has been removed from the parental home to be placed with relatives applies when the DHS is making its initial placement decision, but it does not apply to a court's decision regarding whether to appoint a guardian for the child under MCL 712A.19c(2). In deciding whether to appoint a guardian under MCL 712A.19c(2), a court must determine whether the guardianship is in the child's best interests. In so doing, the court has the discretion to consider the best-interest factors from the Child Custody Act, MCL 722.23; the Adoption Code, MCL 710.22(g); or any other factors that may be relevant under the circumstances of a particular case.

1. The Court of Appeals erred by holding that the preference set forth in MCL 722.954a for placing a child with relatives after the initial removal from a parent's custody applies to a court's decision under MCL 712A.19c whether to appoint a guardian for a child whose parents' rights have been terminated. MCL 722.954a applies from the moment a child is removed from his or her parents' care and throughout the review process, but there is no indication in the statutory language that the Legislature intended this preference to apply beyond the time frame identified within MCL 722.954a. Similarly, MCL 712A.19c expressly applies only to instances in which a child remains in placement following the termination of parental rights, which occurs after the DHS makes the initial placement decision regulated by MCL 722.954a. Moreover, MCL 712A.19c(14) expressly provides that MCL 712A.19c, which includes the court's authority to appoint a guardian under MCL 712A.19c(2), applies only to cases in which parental rights to the child were terminated, and MCL 712A.19a(7)(c) establishes a separate process for appointing a guardian before parental rights have been terminated. The fact that MCL 712A.19c(2) refers neither to MCL 722.954a nor to "relatives" bolsters the conclusion that the preference for placement with relatives created in MCL 722.954a does not apply outside the period for determining a child's initial placement immediately after removal.

2. MCL 712A.19c(2) provides that at a review hearing for a child who remains in placement after parental rights were terminated, the trial court may appoint a guardian if it determines that doing so is in the child's best interests. Because MCL 712A.19c(2) does not direct a court to apply certain factors or otherwise limit a court's method for determining the child's best interests, a trial court has discretion to determine the best method for analyzing the child's best interests by considering the circumstances relevant to the particular case. While the Adoption Code factors set forth in MCL 710.22(g) provide a useful list of considerations that may be relevant to a guardianship decision, neither the language of MCL 712A.19c(2) nor the similarities between a guardianship and an adoption requires application of the Adoption Code factors to all guardianship petitions. Depending on the circumstances, a case may more reasonably lend itself to application of the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court for purposes of a particular case.

3. The trial court did not abuse its discretion by applying the best-interest factors from the Child Custody Act rather than those set forth in the Adoption Code to decide Scribner's petition for a guardianship under MCL 712A.19c. The Child Custody Act factors incorporate a comparative analysis, which was a logical method for determining which of the two placement options was in the children's best interests. The court did not clearly err in its factual findings regarding these factors or in its conclusion that a guardianship with Scribner was not in the children's best interests under MCL 722.19c(2). Because the Court of Appeals erroneously concluded that a preference for placement with relatives existed under MCL 712.19c(2) and substituted its judgment for the trial courts' on questions of fact regarding the children's best interests, the Court of Appeals judgment was reversed and the case remanded to that Court for consideration of Scribner's appeal of the MCI Superintendent's denial of consent to adopt the children.

Court of Appeals judgment reversed; case remanded to that Court for further proceedings.

©2014 State of Michigan

# Opinion

Chief Justice:    Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED APRIL 22, 2014

STATE OF MICHIGAN

SUPREME COURT

In re COH, ERH, JRG, & KBH, Minors.

No. 147515

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This case requires us to consider the interplay between MCL 722.954a and MCL 712A.19c. Specifically, we must determine whether the preference for placement with relatives created by MCL 722.954a is relevant to a court's consideration of a petition to appoint a guardian under MCL 712A.19c(2).

Because we conclude that the two statutes apply at different and distinct stages of child protective proceedings, we hold that there is no preference for placement with relatives as part of a guardianship determination under MCL 712A.19c(2). Accordingly, because the Court of Appeals in this case applied a preference in favor of creating a guardianship with a relative in support of its decision to reverse the trial court, we

conclude that the Court of Appeals erred. Therefore, we reverse the Court of Appeals and remand to that Court to consider issues not previously addressed.

## I. FACTS AND PROCEDURAL HISTORY

In February 2008, the Department of Human Services (DHS) removed COH, ERH, JRG, and KBH from their mother's care under MCL 712A.2(b).[1] The children were initially placed in two separate foster homes; however, in October 2008, all of the children were placed in their current foster home, with Holy Cross Children's Services supervising the placement.

At the December 12, 2008, review hearing, the DHS expressed its intent to seek termination of the mother's and both fathers' parental rights, and, in March 2009, the DHS petitioned to terminate all parental rights. A dispositional hearing occurred in June 2009, and the trial court terminated the fathers' parental rights but did not terminate the mother's parental rights. The trial court concluded that grounds existed to terminate the mother's rights, but that termination of her parental rights was not in the children's best interests at that time. One of the exhibits offered during the dispositional hearing was a letter dated June 2, 2009, written to the trial court by appellant Lori Scribner, who is the paternal biological grandmother of COH, ERH, and KBH. Scribner requested that the trial court return the children to the mother and stated that if the children were not returned to their mother, Scribner "would like to petition the court for guardianship and would like information on how to proceed."[2]

---

[1] JRG does not have the same biological father as COH, ERH, and KBH.

[2] Holy Cross's foster care worker also testified that Scribner first expressed an interest in a guardianship in May 2009.

In July 2010, the DHS again petitioned to terminate the mother's parental rights. Scribner moved to intervene and to be appointed the children's juvenile guardian under MCL 712A.19c(2) and MCR 3.979. The prosecutor and the mother agreed that the mother would plead no contest to the allegations that she was unable to provide proper care and custody for the children, that it was in the children's best interests to terminate the mother's rights, and, if the plea was accepted, the prosecutor would agree that the children not be committed to the Michigan Children's Institute (MCI) until the trial court ruled on Scribner's guardianship petition. The trial court accepted the mother's plea under these conditions.

On August 26, 2010, the trial court held a guardianship hearing. At the hearing, Scribner testified that she had lived in Florida since 2005. Scribner also testified that she had frequent contact with the children before moving to Florida, that she traveled to Michigan in the summer of 2007 to visit the children, and that she continued to have contact with the children after they were removed from the mother's care in February 2008. However, Scribner testified that, in her opinion, Holy Cross frustrated her efforts to contact the children after the children were placed in their current foster home in October 2008. Regarding her efforts to have the children placed in her home, Scribner testified that she began the process "a few months after" the children were removed from the mother's care. Because Scribner was living in a two-bedroom apartment, she also began looking for a larger home to accommodate the children, but she did not purchase the home until July 2009 and did not move into the home immediately. Scribner also testified that she visited the children in Michigan during the summer of 2010. As part of

3

the guardianship decision process, the trial court permitted the children to visit Scribner in Florida for Thanksgiving and Christmas in 2010.

A February 2011 evidentiary hearing regarding Scribner's motion for a guardianship included, among other things, testimony from multiple witnesses about the children's visits to Florida and the foster parents' living arrangements and parenting methods, some of which were incompatible with Holy Cross's procedures.[3] Ultimately, the trial court denied Scribner's guardianship petition.

In making the guardianship decision, the trial court applied the best-interest factors from the Child Custody Act, MCL 722.21 *et seq.*, and determined that it was in the children's best interests to remain with their foster parents, who had petitioned to adopt the children. Accordingly, the trial court committed the children to the DHS under MCL 400.203 for permanency planning, supervision, and care and placement.

Scribner requested consent from the MCI superintendent to adopt the children, but the superintendent denied the request, finding that adoption by the foster parents was in the children's best interests. Scribner filed a motion with the trial court under MCL 710.45(2), alleging that the superintendent's decision was arbitrary and capricious. The trial court denied the motion.

Scribner appealed by leave granted in the Court of Appeals, which reversed the trial court's denial of Scribner's petition for guardianship. *In re COH, ERH, JRG &*

---

[3] Testimony established that the foster parents at times required the children to run laps around the house or consume fish oil and Tabasco sauce as punishment. The foster father testified that the foster parents discontinued those discipline methods at Holy Cross's request.

4

*KBH, Minors*, unpublished opinion per curiam of the Court of Appeals, issued June 25, 2013 (Docket Nos. 309161 and 312691). The Court of Appeals concluded that the trial court "failed to recognize the preference for children to be placed with relatives" and determined that "had the trial court recognized this preference and then given [Scribner] the special preference and consideration that she was due as the children's grandmother, the court would have granted the guardianship petition." Unpub op at 5. The Court of Appeals did not address Scribner's appeal of the denial of consent to adopt, finding the issue moot under its disposition of the case. We granted the DHS's application for leave to appeal. 495 Mich 870 (2013).

## II. STANDARD OF REVIEW

This Court reviews de novo issues of statutory interpretation. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). "A court's factual findings underlying the application of legal issues are reviewed for clear error." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012).

## III. ANALYSIS

This case involves the removal of juveniles from the care of their biological parents. As explained in *In re Rood*, 483 Mich 73, 93; 763 NW2d 587 (2009), the overarching goals guiding the juvenile code, MCL 712A.1 *et seq.*, are established in MCL 712A.1(3):

> This chapter shall be liberally construed so that each juvenile coming within the court's jurisdiction receives the care, guidance, and control, preferably in his or her own home, conducive to the juvenile's welfare and the best interest of the state. If a juvenile is removed from the control of his or her parents, the juvenile shall be placed in care as nearly as possible

5

> equivalent to the care that should have been given to the juvenile by his or her parents.

See, also, MCR 3.902(B).

## A. LEGAL BACKGROUND

Child protective proceedings are generally divided into the adjudicative and the dispositional phases. "The adjudicative phase determines whether the . . . court may exercise jurisdiction over the child," *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993), and includes "a preliminary hearing at which the court may authorize a petition for removal of a child from his home, MCL 712A.13a(2)," *In re Mason*, 486 Mich 142, 154; 782 NW2d 747 (2010).

If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child. *In re Brock*, 442 Mich at 108. The dispositional phase includes "review hearings to evaluate the child's and parents' progress, MCL 712A.19, permanency planning hearings, MCL 712A.19a, and, in some instances, a termination hearing, MCL 712A.19b." *In re Mason*, 486 Mich at 154. Additionally, MCL 712A.19c establishes the procedures applicable when a child remains in a placement after termination of parental rights.

When a child is removed from a parent's care during the adjudication phase under MCL 712A.2(b), as in this case, "the court shall order the juvenile placed in the most family-like setting available consistent with the juvenile's needs." MCL 712A.13a(12).

6

The "agency," which was the DHS in this case,[4] must complete an initial services plan within 30 days of the child's placement. MCL 712A.13a(10)(a). As part of the initial services plan, the DHS is required to comply with MCL 722.954a(2), which, at the times relevant to this case, stated:

> *Upon removal*, . . . the supervising agency shall, within 30 days, identify, locate, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs as an alternative to foster care. [Emphasis added.][5]

The DHS is also required, under former MCL 722.954a(2), to meet the following requirements not more than 90 days after the child's removal:

> (a) Make a placement decision and document in writing the reason for the decision.
>
> (b) Provide written notice of the decision and the reasons for the placement decision to . . . each relative who expresses an interest in caring for the child . . . .

Finally, former MCL 722.954a(3) provides for review of the DHS's decision:

---

[4] "Agency" is defined as

> a public or private organization, institution, or facility that is performing the functions under part D of title IV of the social security act, 42 USC 651 to 669b, or that is responsible under court order or contractual arrangement for a juvenile's care and supervision. [MCL 712A.13a(1)(a).]

[5] The Legislature amended MCL 722.954a, effective December 14, 2010. 2010 PA 265. Because the trial court decided the issues relevant to the children's initial placement before December 14, 2010, we analyze this case under the statutory provisions in effect when the trial court decided the issues and, as a result, the statutory citations in this opinion may not correspond to the amended version of MCL 722.954a.

A person who receives a written decision described in subsection (2) may request in writing, within 5 days, documentation of the reasons for the decision, and if the person does not agree with the placement decision, he or she may request that the child's attorney review the decision to determine if the decision is in the child's best interest. If the child's attorney determines the decision is not in the child's best interest, within 14 days after the date of the written decision the attorney shall petition the court that placed the child out of the child's home for a review hearing. The court shall commence the review hearing not more than 7 days after the date of the attorney's petition and shall hold the hearing on the record.

In this case, Scribner seeks a juvenile guardianship under MCL 712A.19c, which applies during the dispositional phase of child protective proceedings and states in relevant part:

> (1) [I]f a child remains in placement *following the termination of parental rights* to the child, the court shall conduct a review hearing not more than 91 days after the termination of parental rights and no later than every 91 days after that hearing for the first year following termination of parental rights to the child. If a child remains in a placement for more than 1 year following termination of parental rights to the child, a review hearing shall be held no later than 182 days from the immediately preceding review hearing before the end of the first year and no later than every 182 days from each preceding review hearing thereafter until the case is dismissed. . . . At a hearing under this section, the court shall review all of the following:
>
> (a) The appropriateness of the permanency planning goal for the child.
>
> (b) The appropriateness of the child's placement.
>
> (c) The reasonable efforts being made to place the child for adoption or in other permanent placement in a timely manner.
>
> (2) [I]f the court determines that it is in the child's best interests, the court may appoint a guardian for the child.

* * *

8

(14) *This section applies only to a child's case in which parental rights to the child were . . . terminated as the result of a proceeding under section 2(b)* of this chapter . . . .  This section applies as long as the child is subject to the jurisdiction, control, or supervision of the court or of the Michigan children's institute or other agency.  [Emphasis added.]

## B. INTERPLAY BETWEEN MCL 722.954a AND MCL 712A.19c

When interpreting statutes, "our primary task . . . is to discern and give effect to the intent of the Legislature."  *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) (citations omitted).  To accomplish that task, we begin by examining the language of the statute itself.  *Id.* (citation omitted).  "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written."  *Id.* (citation omitted).

The plain language of MCL 722.954a and MCL 712A.19c establishes that the two statutes apply at different stages of child protective proceedings.  Specifically, MCL 722.954a(2) provides that "[u]pon removal" DHS has a duty to "identify, locate, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs" and that duty must be satisfied "within 30 days" of removal.  Accordingly, MCL 722.954a applies from the moment a child is removed from his or her parents' care, i.e., *before* any placement decision is made, and, consequently, the requirements of MCL 722.954a are intended to guide the DHS's initial placement decision.

The preference for placement with relatives is also expressly preserved throughout the review process established in former MCL 722.954a(2) and (3).  Specifically, subsection (2)(b) requires the DHS to make an initial placement decision within 90 days

9

of removal and "[p]rovide written notice of the decision and the reasons for the placement decision to . . . each relative who expresses an interest in caring for the child . . . ." Additionally, subsection (3) permits a relative who receives notice to request an explanation of the decision and potentially obtain a review hearing if the person does not agree with the placement decision. However, the review process is limited to a narrow time period: the request for documentation of the reasons for the placement decision must be made within 5 days of receiving the placement decision, the potential petition for a review hearing must be made within 14 days of the written decision, and the review hearing must be held within 7 days after the petition. MCL 722.954a(3). Thus, there is no indication within the statutory language of MCL 722.954a that the Legislature intended that the preference for placement with relatives exists beyond the time frame identified within MCL 722.954a.

Similarly, the plain language of MCL 712A.19c expressly limits the statute's applicability only to instances in which "a child *remains in placement following the termination of parental rights . . . .*" MCL 712A.19c(1) (emphasis added). Thus, the plain language of MCL 712A.19c establishes that the statute only applies *after* termination of parental rights, which occurs *after* the DHS makes the initial placement decision regulated by MCL 722.954a.

Although when considered in isolation MCL 712A.19c(2) does not expressly state that the court's authority to appoint a guardian under that subsection is limited to the posttermination stage of child protective proceedings, we must consider the subsection's "placement and purpose in the statutory scheme." *Sun Valley Foods Co*, 460 Mich at 237

10

(quotation marks and citation omitted). As established, the subsection immediately preceding subsection (2) expressly limits the statute's applicability to the posttermination stage. Moreover, subsection (14) expressly provides that "[t]his section," meaning section 19c, "applies only to a child's case in which parental rights to the child were . . . terminated . . . ." Because the court's authority to appoint a guardian under MCL 712A.19c(2) is part of section 19c, MCL 712A.19c(14) expressly limits its application to the posttermination stage of child protective proceedings.

Additionally, MCL 712A.19a establishes the process for appointing a guardian *before* termination of parental rights. Specifically, MCL 712A.19a(7) provides that

> [i]f the agency demonstrates . . . that initiating the termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child . . . then the court shall order 1 or more of the following alternative placement plans:
>
> * * *
>
> (c) . . . [i]f the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated.

Because the Legislature enacted separate statutes that create distinct processes for appointing a guardian before and after termination of parental rights, we must interpret those statutes in a way that avoids rendering either statute surplusage. *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013). We conclude that the process

11

for appointing a guardian under MCL 712A.19c(2) is only applicable at the posttermination stage of a child protective proceeding.[6]

Finally, MCL 712A.19c(2) does not refer to MCL 722.954a, nor does it refer to "relatives," which bolsters the conclusion that the preference for placement with relatives created in MCL 722.954a does not apply outside the time period for determining a child's initial placement immediately after removal and, therefore, does not apply to a court's decision to appoint a guardian under MCL 712A.19c(2) after parental rights are terminated. Accordingly, although the Court of Appeals accurately concluded that MCL 722.954a creates a statutory preference for placement with relatives, the plain language of MCL 722.954a limits the applicability of the preference to only the initial stage of the process, i.e., immediately after a child is removed from his or her parents' care and during the statutory review period established in MCL 722.954a(3).[7] Therefore, we agree

---

[6] The court rules likewise reflect the fact that the statutory scheme creates different processes for appointing a guardianship that apply at different stages of child protective proceedings. Specifically, MCR 3.979(A) states:

> Appointment of Juvenile Guardian; Process. If the court determines *at a posttermination review hearing or a permanency planning hearing* that it is in the child's best interests, the court may appoint a juvenile guardian for the child pursuant to MCL 712A.19a or MCL 712A.19c. [Emphasis added.]

Thus, MCR 3.979(A) recognizes that a court may appoint a guardian at a posttermination review hearing, which is governed by MCL 712A.19c, or at a permanency planning hearing, which is governed by MCL 712A.19a.

[7] As noted, the Legislature amended MCL 722.954a, effective December 14, 2010. 2010 PA 265. We also note that as part of the 2010 amendments, the Legislature added MCL 722.954a(5), which expressly requires the DHS to "give special consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs" and

12

with the Court of Appeals' conclusion in *In re AEG & LEG*, unpublished opinion per curiam of the Court of Appeals, issued November 7, 2013 (Docket No. 316599), that the plain language of MCL 722.954a "indicates that the Legislature intended the statute to provide procedural requirements where a child is removed pursuant to a child protective proceeding," but that there "is no indication that [MCL 722.954a] was intended to apply to . . . decisions after termination," which includes a court's decision regarding a guardianship petition under MCL 712A.19c(2).

## C.  INTERPRETATION OF MCL 712A.19c

Having established that MCL 712A.19c applies *after* termination of parental rights and does not include a preference for creating a guardianship with a relative, we must now determine what a trial court must do to satisfy MCL 712A.19c(2).  The plain language of the statute simply provides that the trial court may appoint a guardian "if the court determines that [a guardianship] is in the child's best interests[.]"  MCL 712A.19c(2).

As previously discussed, the trial court applied the best-interest factors from the Child Custody Act, MCL 722.23;[8] however, Scribner argues, and the Court of Appeals

---

requires the DHS to do so "[*b*]*efore* determining placement of a child" in the DHS's care. Emphasis added.  Accordingly, although we do not expressly apply subsection (5) in this case, we note that our analysis is not inconsistent with this new statutory language, because subsection (5) expressly applies *before* the initial placement decision is made.

[8] MCL 722.23 states:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

agreed, that the best-interest factors in the Adoption Code, MCL 710.22(g),[9] should apply

to a guardianship decision under MCL 712A.19c(2). Therefore, the Court of Appeals

---

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

[9] MCL 710.22(g) states:

"Best interests of the adoptee" or "best interests of the child" means the sum total of the following factors to be considered, evaluated, and

14

determined by the court to be applied to give the adoptee permanence at the earliest possible date:

(*i*) The love, affection, and other emotional ties existing between the adopting individual or individuals and the adoptee or, in the case of a hearing under [MCL 710.39], the putative father and the adoptee.

(*ii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], the putative father to give the adoptee love, affection, and guidance, and to educate and create a milieu that fosters the religion, racial identity, and culture of the adoptee.

(*iii*) The capacity and disposition of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], the putative father, to provide the adoptee with food, clothing, education, permanence, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(*iv*) The length of time the adoptee has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(*v*) The permanence as a family unit of the proposed adoptive home, or, in the case of a hearing under [MCL 710.39], the home of the putative father.

(*vi*) The moral fitness of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father.

(*vii*) The mental and physical health of the adopting individual or individuals or, in the case of a hearing under [MCL 710.39], of the putative father, and of the adoptee.

(*viii*) The home, school, and community record of the adoptee.

(*ix*) The reasonable preference of the adoptee, if the adoptee is 14 years of age or less and if the court considers the adoptee to be of sufficient age to express a preference.

(*x*) The ability and willingness of the adopting individual or individuals to adopt the adoptee's siblings.

15

concluded that the trial court erred by using the Child Custody Act factors to compare Scribner and the foster parents.

In order to define the proper method for determining whether a guardianship is in the child's best interest, we must first interpret MCL 712A.19c(2). Issues of statutory interpretation are reviewed de novo. *Ambassador Bridge Co*, 481 Mich at 35. The plain language of MCL 712A.19c(2) does not expressly require application of any particular set of factors; rather, the statute simply requires the court to base its decision whether to appoint a guardian on "the child's best interests." Because MCL 712A.19c(2) does not direct a court to apply certain factors or otherwise limit a court's method for determining the child's best interests, the statute grants the court discretion regarding how to determine what is in the child's best interests depending on the case-specific circumstances. See *Easton Sch Dist No 4 v Snell*, 24 Mich 350, 353 (1872) (holding that when a statute grants a power "in general terms," the statute "leaves the details to the sound discretion" of the entity to whom the power is granted).

Because MCL 712A.19c(2) grants the trial court discretion in determining whether a guardianship is in the child's best interest, a trial court's decision regarding what factors to consider in making the best-interest determination is reviewed for an abuse of discretion. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

---

(*xi*) Any other factor considered by the court to be relevant to a particular adoption proceeding, or to a putative father's request for child custody.

16

A trial court may use its discretion under MCL 712A.19c(2) to determine the best method for analyzing the child's best interests by considering the circumstances relevant to the particular case. The Adoption Code factors are a logical decision-making tool when only one party petitions for a guardianship, because the court need not compare the petitioning party to any other party. Rather, determining whether the guardianship is in the child's best interests depends solely on whether a guardianship with the petitioning party is in the child's best interests. Moreover, a juvenile guardianship has many characteristics that are similar to an adoption. Thus, the Adoption Code factors provide a useful list of considerations that may be relevant to a guardianship decision, and trial courts may therefore be led to apply the Adoption Code factors in deciding some, or perhaps many, petitions for guardianship.

However, neither the statutory language of MCL 712A.19c(2) nor the similarities between a guardianship and an adoption require application of the Adoption Code factors to all guardianship petitions, as the Court of Appeals suggests. Rather, depending on the circumstances, a case may more reasonably lend itself to application of the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court for purposes of a particular case.[10]

---

[10] In this regard, we note that the Child Custody Act and the Adoption Code factors permit a court to consider "[a]ny other factor considered by the court to be relevant[.]" MCL 722.23(*l*); MCL 710.22(g)(*xi*). Thus, although MCL 712A.19c(2) does not create an overarching preference for creating a guardianship with a relative, the statute nevertheless permits a trial court to consider familial ties in determining whether the guardianship is in the child's best interests. However, we stress that if a court concludes that familial ties are relevant to the guardianship decision under MCL 712A.19c(2), the familial relationship is only *a factor* that must be balanced among all the other relevant factors—it does not give rise to *a presumption* in favor of creating a guardianship.

Finally, we must review the trial court's findings of fact regarding the best-interest determination, which are subject to the clear-error standard on appeal. See MCR 2.613(C). See, also, *In re BKD*, 246 Mich App 212, 219; 631 NW2d 353 (2001) (applying the clear-error standard to the trial court's findings of fact regarding the best-interest factors in the Adoption Code).[11] "A finding is 'clearly erroneous' if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich at 152 (quotation marks, brackets, and citation omitted). Thus, under the clear-error standard, "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (quotation marks, brackets, and citations omitted).

## D. APPLICATION

Because we conclude that MCL 722.954a and MCL 712A.19c apply at different stages of child protective proceedings, we conclude that the requirements of MCL 722.954a have no bearing on a trial court's decision regarding a guardianship petition under MCL 712A.19c. Thus, we conclude that the Court of Appeals erroneously held that, as a relative of the children, Scribner was entitled to a preference as part of her petition for a guardianship under MCL 712A.19c.[12] However, that conclusion does not

---

[11] Cases in which this Court reviewed the trial court's factual findings underlying its best-interest determination for whether they were against the great weight of the evidence did so under MCL 722.28, which does not apply here.

[12] Although our grant order directed the parties to address whether Scribner "was entitled to [a] preference [for placement with relatives] where her son's parental rights to the

18

necessarily mandate that we affirm the trial court's decision to deny Scribner's guardianship petition. Rather, we must also consider whether the trial court abused its discretion when it selected the Child Custody Act's best-interest factors rather than some other set of factors to determine whether the guardianship was in the children's best interests. Additionally, we must consider whether the trial court clearly erred in its findings of fact regarding the children's best interests under MCL 712A.19c.

We conclude that the trial court did not abuse its discretion by applying the best-interest factors from the Child Custody Act. In this case, the trial court was faced with two placement options for the children; therefore, logic required the trial court to compare the two options in order to determine which placement was in the children's best interest. Under these circumstances, such a comparison was necessary because, although both placement options may be qualified to meet the children's needs, only one of the placement options can truly be in the children's *best* interests. Because the Child Custody Act factors incorporate a comparative analysis, and because comparison of the two placement options in this case was a logical method for determining which option was in the children's best interests, the trial court's decision to apply those factors rather than the Adoption Code factors was not an abuse of discretion.[13]

---

children had been terminated," 495 Mich at 870, that question is dependent on holding that a preference for placement with relatives applies to MCL 712A.19c(2). Because we conclude that no such preference exists, we need not consider the impact of the termination of parental rights on a grandparent's status as a relative under MCL 722.954a(2).

[13] Application of the Child Custody Act best-interest factors outside the context of a custody dispute is not a novel approach in the area of juvenile law. For example, in *In re Barlow*, 404 Mich 216, 236; 273 NW2d 35 (1978), we concluded that consideration of

19

We likewise conclude that the trial court did not clearly err in its application and findings of fact related to the Child Custody Act's best-interest factors to decide Scribner's petition for a guardianship under MCL 712A.19c. The trial court accurately emphasized that "the paramount concern is what is best for the *children*." The trial court concluded that the children had developed a strong bond with the foster parents, while only JRG displayed a similar bond with Scribner. The trial court concluded that the foster parents had demonstrated the capacity to give the children love and guidance whereas Scribner expressed a desire to do so, but had not demonstrated the ability to do so, given that she had not cared for the children for a significant period of time. The trial court determined that Scribner had a superior financial ability to support the children, but that the foster parents also had sufficient income to support the children financially. The trial court also determined that the children's stability with the foster parents and desirability of maintaining that stability "overwhelming[ly]" favored denying the guardianship. The trial court acknowledged that Scribner could have provided similar stability given the opportunity, but it would be improper to focus on "what may be fair for" Scribner rather than "the best interests of the *children*."

---

the Child Custody Act factors "for guidance" was proper in the context of termination of parental rights and adoption cases. We recognize that *In re Barlow* was decided before specific best-interest factors were added to the Adoption Code by amendment in 1980 and thus should not be interpreted as condoning the application of different factors in the face of a statutory requirement to do otherwise. However, *In re Barlow* is nevertheless instructive in this case, in which the Legislature has not elected to confine the court's decision-making process regarding guardianships to a specific list of statutory factors.

20

The trial court likewise found the children's school record to be a compelling reason to deny the guardianship. The trial court recognized that the school district where Scribner lived was highly regarded, but the court noted that the children made "significant progress in their school performances" while with the foster parents. Accordingly, the trial court stated, "[h]ow uprooting them and changing schools would serve their best interests is highly questionable." The trial court recognized that significant testimony was devoted to the children's preference and concluded that JRG was agreeable to either outcome, while COH, ERH, and KBH were "decidedly in favor of remaining in their existing placement [with the foster parents] on a permanent basis." Acknowledging that the children's preference had already been overridden when they were removed from the care of their biological parents, the trial court determined that it was not in the children's best interest to again ignore their preference, particularly when that preference was for what the trial court determined to be a "stable, loving, secure, and trustworthy home . . . ." Finally, the trial court lamented its conclusion that neither the foster parents nor Scribner seemed willing to encourage a relationship with the other party.

Overall, we are not left with the definite and firm conviction that a mistake was made in assessing the facts relevant to the children's best interests and, thus, we conclude that the trial court's best-interest determination was not clearly erroneous. First, the trial court provided an individualized analysis based on the relevant evidence for each of the applicable factors. Second, the trial court did not take a one-sided view of the evidence; rather, the court weighed evidence that favored each placement option and acknowledged that Scribner could likely provide a stable and caring environment for the children if

21

given the opportunity. The trial court also recognized that its decision to deny the guardianship could appear unfair to Scribner. However, the trial court correctly explained that its focus remained on the *children's* best interests, as required by law. See MCL 712A.19c(2). Finally, the Court of Appeals' conclusion that the trial court erred by denying Scribner's petition for guardianship under MCL 712A.19c(2) was largely rooted in its erroneous conclusion that Scribner was entitled to a preference because of her status as a relative. However, as previously established, the Court of Appeals erroneously interpreted MCL 722.954a and MCL 712A.19c. Because there is no statutory preference for creating a guardianship with a relative under MCL 712A.19c(2), the entirety of the Court of Appeals' review of the trial court's best-interest determination is severely undercut.

Accordingly, we conclude that the Court of Appeals erroneously substituted its judgment for the trial court's judgment on questions of fact. Additionally, we conclude that the trial court did not clearly err in concluding that a guardianship with Scribner was not in the children's best interests under MCL 722.19c(2).

## IV. CONCLUSION

We hold that MCL 722.954a creates a preference for placement with relatives, but that preference does not apply to a court's decision regarding whether to appoint a guardian under MCL 712A.19c(2). We further hold that, in deciding whether to appoint a guardian, a court must determine whether the guardianship is in the child's best interests, and to do so the court may consider the best-interest factors from the Child Custody Act, the Adoption Code, or any other factors that may be relevant under the circumstances of a particular case.

22

Because the Court of Appeals erroneously concluded that a preference for placement with relatives exists under MCL 712.19c(2) and substituted its judgment for the trial court's on questions of fact regarding the children's best interests, we reverse the Court of Appeals judgment and remand to that Court to consider Scribner's appeal of the MCI Superintendent's denial of consent to adopt the children.

Michael F. Cavanagh
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano