*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BURGEN/BURGEN-SMITH, Minors.

UNPUBLISHED
December 8, 2022

No. 361226
Kalamazoo Circuit Court
Family Division
LC No. 2019-000140-NA

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his two minor children. We reverse and remand for further proceedings.

## I. FACTS

The children were removed from the custody of their mother in July 2020, when against the recommendation of petitioner, the Department of Health and Human Services (DHHS), she left the substance abuse treatment facility where she had been living with the children. At that time, respondent-father recently had been released on parole. Petitioner filed a supplemental petition alleging that respondent was homeless, was unable to provide stability for the children, and had a history of substance abuse that placed the children at risk of harm in his care.

In July 2020, after being on parole for about two months, respondent returned to jail where he remained until April 2021. While in jail, no services recommended by petitioner were available to him, but respondent engaged with the children through phone calls and letters. In April 2021, respondent's parole was revoked and he was sent to prison with a maximum release date in December 2022. Petitioner identified the barriers to reunification of respondent with the children as lack of housing upon release from prison, substance abuse, and lack of parenting skills.

In July 2021, petitioner recommended that the goal for the children be changed to adoption because respondent had not rectified the barriers to reunification. The foster care caseworker noted that respondent had not engaged in substance abuse treatment, but testified that she did not know whether any substance abuse services were available at the jail or the prison where respondent was housed. She testified that respondent informed her that the prison did not have any substance abuse programs. The caseworker testified that an additional barrier to reunification was

-1-

respondent's lack of emotional stability, but she was not aware of any psychological counseling programs that respondent could have participated in while incarcerated. Similarly, the caseworker identified domestic violence as a barrier to reunification but was unaware of any domestic violence counseling programs accessible to respondent.

The termination hearing was held during December 2021 and January 2022. A new foster care caseworker testified that she was new to the case and had not worked with respondent to provide services. She further testified that she was not aware if the previous caseworkers had worked to provide respondent with services. The caseworker also did not know in which facility respondent was incarcerated. At the conclusion of the first hearing, the trial court expressed concern about the lack of services offered to respondent and directed petitioner to present testimony at the next hearing regarding the services available to respondent while incarcerated.

At the continued hearing, the caseworker testified that respondent was paroled in May 2020 and also testified (incorrectly) that respondent was living in the community until he returned to prison in April 2021. The caseworker testified that during this period petitioner referred respondent for mental health counseling, a domestic violence program, parenting classes, random drug screens, housing resources, employment resources, and a psychological evaluation, but that respondent did not engage in any services offered. The record, however, indicates that respondent was in jail during this period.

The caseworker further testified that the services typically offered by the prison were not offered at that time due to the COVID-19 pandemic, and that respondent also was not eligible to participate in services because he had received misconduct tickets. The caseworker reported that respondent was also ineligible to participate in counseling because counseling was only available to inmates with severe mental health needs. When asked by the trial court if it would be beneficial to wait until respondent was released from prison in December 2022 to permit respondent to engage in services before seeking termination, the caseworker disagreed, apparently on the mistaken belief that when respondent previously had been offered services he had been on parole.

At the conclusion of the hearing, the trial court found that petitioner had offered respondent services "as much as they can be [offered]," and that respondent's behavior caused him to become ineligible for services provided by the prison. The trial court concluded that reasonable efforts were made but that those efforts were unsuccessful because of respondent's own behavior. The trial court found that termination was warranted under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), and that termination of respondent's parental rights was in the best interests of the children. Respondent now appeals.

## II. DISCUSSION

### A. REASONABLE EFFORTS

Respondent contends that the trial court clearly erred when it found that petitioner made reasonable efforts toward reunification. Respondent argues that petitioner had only minimal contact with him while he was incarcerated and that the services recommended by petitioner were not available to him while incarcerated. We agree.

Generally, to preserve a challenge to the reasonableness of the agency's efforts toward reunification, the respondent must "object or indicate that the services provided to [him] were somehow inadequate," at the time the trial court adopts a service plan or soon afterward. *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502; 358503); slip op at 1. A later challenge during the trial court proceedings may be adequate to preserve the challenge if the facts support a finding that the services being offered no longer were adequate. See *id*. In this case, respondent did not object to or otherwise indicate that the initial case service plan was inadequate until closing argument at the termination hearing. The record indicates, however, that respondent, respondent's counsel, and the caseworkers at several hearings informed the trial court that various services ordered in the case service plan were not available to respondent while incarcerated, and the trial court acknowledged that respondent did not have access to services.

As in *In re Atchley*, ___ Mich App at ___; slip op at 3 "[a]lthough the challenges to the adequacy of the services were not in the form of a traditional objection," we conclude that the repeated references throughout the record to the lack of available services were sufficient to alert the trial court that the services provided were inadequate, thereby preserving for appeal respondent's challenge to the reasonableness of petitioner's reunification efforts. We review for clear error the trial court's findings regarding whether the petitioner made reasonable efforts. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). A finding is clearly erroneous if, although there is evidence to support the finding, we are left with a definite and firm conviction that a mistake has been made. *Id*.

When a child is removed from a parent's custody, the DHHS generally has the affirmative duty to make reasonable efforts to reunify the parent with the child before seeking to terminate the parent's parental rights. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). Absent aggravating circumstances under MCL 712A.19a(2), the DHHS is required to adopt a service plan outlining the steps that both the agency and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

A parent's incarceration does not relieve the agency's obligation to make reasonable efforts. See MCL 712A.19a(2); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) ("The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated.") Rather, the parent must be "afforded a meaningful and adequate opportunity to participate." *Id*. When the circumstances of the parent's incarceration prevent the parent from participating in the service plan as written, the DHHS nonetheless must update the service plan, *id*. at 157-158, and the agency's failure to do so prejudices the parent's rights. *Id*. at 157 n 8.

A review of the record indicates that respondent was in jail from late July 2020, and later was incarcerated in prison. Various caseworkers testified during hearings that services were not offered to respondent while he was in jail, nor later when he was in prison, or that the caseworkers were unaware whether services were available. On multiple occasions, petitioner noted in the parent agency treatment plan that a service was not available to respondent while incarcerated or that petitioner did not know if a service was available and that respondent was expected to complete services upon release from incarceration. Petitioner blamed the lack of services on

factors outside of its control, namely, COVID-19 restrictions and respondent's elevated security level as a result of his violations of prison rules. But regardless of the reason for the unavailability of the services, petitioner was not excused from its duty to update the case service plan. See *id*. at 157-158. There is no indication in the trial court record that petitioner made any such effort.

In finding that reasonable efforts were made, the trial court excused petitioner from making referrals for services because respondent's own actions caused the availability of services to be limited. But it is always true that an incarcerated parent largely is responsible for the limitation on his or her ability to participate in services because he or she committed the crime that led to incarceration. Nonetheless, the DHHS is required to make reasonable efforts to provide an incarcerated respondent with a meaningful and adequate opportunity to participate in services. See *id*. at 152.

Here, the trial court implicitly acknowledged that the referrals made to respondent for services were not actually available to him. The trial court did not find that petitioner's efforts provided respondent a meaningful opportunity to participate in the case service plan nor that petitioner updated the plan based on the service restrictions. Rather, the trial court excused petitioner from making such efforts because the limitations on the services available were the consequence of respondent's actions. That circumstance, however, does not relieve petitioner from its obligation to make reasonable efforts toward reunification. Here, petitioner made no efforts whatsoever to provide services to respondent, and therefore failed to satisfy its affirmative duty to make reasonable efforts toward reunification. The trial court clearly erred when it found otherwise.[1]

## B. RELATIVE PLACEMENT

Respondent also contends that the trial court clearly erred by finding that petitioner met its statutory duty to place the children with a relative. We disagree.

Respondent argues that petitioner failed to make the statutorily required efforts to identify, locate, notify, and consult with relatives regarding placement within 30 days of removal. Respondent does not identify any place in the record where he raised this issue before the trial court, and no such argument is readily apparent; this issue therefore is unpreserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review an unpreserved issue in a case involving the termination of parental rights for plain error affecting the respondent's substantial rights, meaning an obvious error that affected the outcome of the proceedings. See *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020). Reversal is not warranted unless the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks and citation omitted).

MCL 722.954a(2) requires the supervising agency, within 30 days of the child's removal, to "identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs."

---

[1] Given our conclusion, we need not address respondent's arguments regarding the statutory grounds supporting termination.

The statute is intended to guide the agency's initial placement decision and to place the child "in the most family-like setting available consistent with the juvenile's needs." *In re COH*, 495 Mich 184, 192-196; 848 NW2d 107 (2014).

Respondent asserts that petitioner did not satisfy the requirements of MCL 722.954a(2). Although respondent alleges some deficiencies in petitioner's efforts regarding the vetting process of a specific relative, RS, none of respondent's assertions, even if true, establish that petitioner failed to comply with MCL 722.954a(2). The trial court record establishes that within days of removal, petitioner identified, located, notified, and consulted with RS regarding possible placement. At the review hearing held after the children were removed, the foster care caseworker testified that petitioner had learned that RS, respondent's mother, was a possible relative placement. The caseworker did not recommend RS as an immediate placement because of RS's Children's Protective Services (CPS) history and criminal history, but informed the trial court that a home study was being completed and that RS was being considered as a possible placement, as were two other possible relative placements. The trial court therefore did not plainly err by finding that petitioner met its statutory duty to make efforts to initially place the children with a relative as directed by MCL 722.954a.[2]

Because the trial court clearly erred when it found that petitioner made reasonable efforts toward reunification, we reverse the trial court's order terminating respondent's parental rights and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[2] To the extent that respondent argues it was error for the children not to be placed with RS or otherwise challenges petitioner's effort to vet RS as a relative placement throughout this matter, the challenge is meritless. The trial court's record includes numerous descriptions of the efforts made to vet RS as a placement, to work with her to expunge her CPS history, and to otherwise include her in this case.