*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SMITH/WHITE, Minors.

UNPUBLISHED
December 22, 2022

No. 361678
Wayne Circuit Court
Juvenile Division
LC No. 2021-000709-NA

In re SMITH, Minor.

No. 361686
Wayne Circuit Court
Juvenile Division
LC No. 2021-000705-NA

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this consolidated appeal,[1] respondent appeals as of right the orders asserting jurisdiction over his minor children, KRLS, and KRLS's half-sister, ALS. On appeal, respondent argues the trial court erred by asserting jurisdiction over KRLS and ALS,[2] because respondent never abused KRLS. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of KRLS's visit to the hospital in May 2021, after respondent heard KRLS, who was about five weeks old, wake up from her nap screaming, and noticed her left arm

---

[1] *In re Smith/White Minors*; *In re A L Smith Minor*, unpublished order of the Court of Appeals, entered June 14, 2022 (Docket Nos. 361678 and 361686).

[2] The petition for KRLS was also filed on behalf of her older half-brother, KDRW. KDRW is not respondent's child, and the trial court's assertion of jurisdiction over KDRW is not at issue on appeal.

-1-

was swollen and had a "dimple" in it. Respondent called KRLS's mother, A. Colvard,[3] asking her to meet him at the hospital, but Colvard was nearby, and went to respondent's home. On arriving, Colvard accused respondent of intentionally harming KRLS, and called the police. Colvard took KRLS to the hospital, where an initial skeletal survey indicated 24 bone fractures in various stages of healing. The survey indicated fractures which were "highly specific for nonaccidental trauma[,]" but other findings indicated "concern for metabolic bone disease." Child Protective Services (CPS) received a referral alleging physical abuse of KRLS the same day.[4]

A second skeletal survey was performed, after KRLS was removed from respondent's and Colvard's care and custody, and placed with her maternal grandparents, which revealed no new fractures. Petitioner, the Michigan Department of Health and Human Services (DHHS), filed two petitions on the basis of the physical abuse allegations. One petition concerned KRLS and her half-brother, KDRW, Colvard's child with another man, and the other petition concerned ALS, respondent's child with another woman. The petition sought termination of KDRW's putative father's parental rights, but did not seek termination of ALS's mother's parental rights. It was later determined KRLS suffered from Osteogenesis Imperfecta (OI), a genetic bone disorder, also known as brittle bone disease.

After a lengthy procedural history rife with COVID-19-related delays, the trial court held a bench trial to determine whether to assert jurisdiction over the children, and whether to terminate parental rights. The trial court primarily considered the conflicting testimonies of two medical experts: Dr. Bradley Norat, the reporting physician, and Dr. Marvin Miller. Dr. Norat specialized in child abuse pediatrics, while Dr. Miller specialized in clinical genetics, biochemical and molecular genetics, and pediatrics. Dr. Norat contended, while KRLS's OI explained some of her fractures, others, specifically, her (1) classical metaphyseal lesion (CML),[5] (2) acromion (scapula) fracture, and (3) posterior rib fractures, were indicative of child abuse and nonaccidental trauma.

Dr. Miller disagreed, arguing all three types of fractures had been observed in infants with OI in published medical studies, and it was common practice, after a child is diagnosed with OI, that allegations of child abuse are usually dropped, because OI explains the injuries. Dr. Miller further argued the lack of bruising or internal thoracic injury in KRLS further indicated this was not child abuse, because, if nonaccidental force had been applied to KRLS to cause these fractures, bruising and internal thoracic injuries should be apparent. Their absence, Dr. Miller contended,

---

[3] While Colvard was a respondent in the trial court proceedings, she pleaded no contest to the allegations in the petition, and is not a party to this appeal.

[4] Respondent and Colvard took KRLS to multiple appointments with her pediatrician and at the hospital out of concern for her bowed legs before the May 2021 incident. However, they were informed this problem would sort itself out as she aged.

[5] Testimony from the doctors explained a CML is a fracture "to a very specific area of the bone called the metaphysis," which "have a very specific appearance[.]" CMLs are not usually found in ribs, but the long bones in the arms and legs, such as the femur, tibia, fibula, humerus, radius, and ulna.

served as evidence the fractures were most likely "fragility fractures," fractures caused by minimal force on bones which are "intrinsically weak."

The trial court found by a preponderance of the evidence KRLS came within the trial court's jurisdiction, as did her half-siblings. However, the trial court found petitioner did not satisfy its burden of proof concerning the statutory grounds or best interest factors for termination of respondent's or Colvard's parental rights. The trial court took temporary jurisdiction over KRLS and ALS, and ordered respondent to complete a treatment plan.

## II. ANALYSIS

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "Jurisdiction must be established by a preponderance of the evidence." *Id.*; MCR 5.972(C)(1). "Preponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008) (quotation marks and citation omitted). "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *In re BZ*, 264 Mich App at 295. "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 203-204; 848 NW2d 107 (2014) (quotation marks and citation omitted). "Thus, under the clear-error standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *Id.* at 204 (quotation marks and citation omitted).

Respondent argues the trial court erred when it exercised jurisdiction over KRLS and ALS, and took KRLS and ALS as temporary court wards. We disagree.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). "The adjudicative phase determines whether the probate court may exercise jurisdiction over the child." *Id.* "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008).

The trial court took jurisdiction over KRLS and ALS under MCL 712A.2(b)(1) and (2):

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, . . . .

* * *

-3-

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . . [MCL 712A.2(b)(1) and (2).]

The trial court, when faced with conflicting medical testimonies, concluded, on the basis of a preponderance of the evidence, it was proper to take jurisdiction over respondent's children, because of the abuse allegations. The preponderance of the evidence standard is not a high burden, essentially requiring only a determination that, when considering all the evidence, it is more likely than not the alleged conduct occurred. *Cross*, 281 Mich App at 740. The trial court determined, weighing all the evidence, that Dr. Norat's testimony and explanation for KRLS's injuries, considering his specialty and direct involvement in the case, was more likely to be correct than Dr. Miller's. On review under a clearly erroneous standard, there is no "definite and firm conviction that a mistake has been made[,]" because this Court cannot "substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *In re COH, ERH, JRG, & KBH*, 495 Mich at 203-204 (quotation marks and citations omitted).

This was not a decision to terminate respondent's parental rights requiring a heightened burden of proof. Under the lesser preponderance of the evidence standard, it is well within the realm of possibility that Dr. Norat's testimony, and not Dr. Miller's, is the correct interpretation for KRLS's injuries. While minds may differ regarding which way the evidence weighs concerning the competing expert opinions, there is no evidence of clear error by the trial court warranting reversal.

## III. CONCLUSION

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

-4-