*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. SPARKS, Jr., Minor.

UNPUBLISHED
April 18, 2024

Nos. 367130; 367590
Macomb Circuit Court
Family Division
LC No. 2021-000004-NA

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

GARRETT, P.J. (*concurring*).

I concur in the decision to affirm the trial court's orders terminating respondents' parental rights to their minor child, CSJ.

While the Department of Health and Human Services (DHHS) could have been more proactive in considering relative placements for CSJ, I am not convinced that the DHHS had a duty to repeatedly follow up with CSJ's grandfather, R. Loren, about whether he remained interested in serving as a relative placement, long after the child's initial placement in foster care. MCL 722.954a, which respondent-mother relies on for her argument on this point, "applies from the moment a child is removed from his or her parents' care, i.e., *before* any placement decision is made, and, consequently, the requirements of MCL 722.954a are intended to guide the [DHHS's] initial placement decision." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 195; 848 NW2d 107 (2014). Within 90 days of the child's removal, the DHHS must make a placement decision and provide written notice of that decision to the child's parents and "each relative who expresses an interest in caring for the child." MCL 722.954a(4)(a) and (b).

The record is clear that, early in these proceedings, a DHHS caseworker spoke with Loren about his interest in serving as a placement for CSJ. Loren expressed interest but stated that he needed to have shoulder surgery first and recover. According to a DHHS report, Loren stated "that he will inform DHHS once he knows what is going to happen with his surgery." CSJ was placed in a licensed foster home after removal. While I cannot locate in the record whether Loren received written notice of this placement decision, it is implausible that Loren could not have been aware, as respondents were living in Loren's workshop during this time and throughout these proceedings.

But even assuming some statutory violation occurred, the ultimate question on appeal is whether the trial court clearly erred by finding that termination of respondents' parental rights was

in CSJ's best interests, a determination predicated on reviewing the trial court's conclusion that guardianship or relative placement with Loren was not in CSJ's best interests. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). Because "[t]he focus at the best-interest stage has always been on the child, not the parent," *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (cleaned up), I am not definitely and firmly convinced that the trial court erred by finding that termination was in CSJ's best interests. CSJ had been out of respondents' care for more than two-and-a-half years, was having his needs met well in his nonrelative placement, and would not receive the permanence that he deserved within a reasonable amount of time in a guardianship with Loren. Therefore, I agree that the trial court's decision to terminate respondents' parental rights to CSJ should be affirmed.

/s/ Kristina Robinson Garrett