STATE OF MICHIGAN
COURT OF APPEALS

|  | UNPUBLISHED
December 4, 2014 |
|---|---|
| *In re* COH, ERH, JRG, and KBH Minors. | No. 309161
Muskegon Circuit Court
Family Division
LC No. 08-036989-NA |
| *In re* COH, ERH, JRG, and KBH Minors. | No. 312691
Muskegon Circuit Court
Family Division
LC Nos. 2011-007780-AF;
2011-007781-AF;
2011-007782-AF;
2011-007783-AF |

ON REMAND

Before: TALBOT, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

In Docket No. 309161, appellant Lori Scribner, paternal grandmother of three of the four minor children, had appealed by leave granted the trial court's order denying her petition for a juvenile guardianship with respect to all four minor children. We previously reversed that order and remanded "for entry of an order appointing appellant the juvenile guardian of the minor children." *In re COH, ERH, JRG, and KBH Minors,* unpublished opinion per curiam of the Court of Appeals, issued June 25, 2013 (Docket Nos. 309161 and 312691), slip op at 1. In Docket No. 312691, the superintendent of the Michigan Children's Institute (MCI) had denied Scribner's request for consent to adopt the children, which decision was upheld by the trial court, and Scribner appealed the court's order rejecting her challenge of the superintendent's decision. We held that the adoption issue was moot given our holding in Docket No. 309161 that Scribner

-1-

was to be appointed the children's guardian. *Id.*[1] The Michigan Supreme Court reversed our ruling in Docket No. 309161 in regard to the guardianship issue and reinstated the trial court's order denying Scribner's guardianship request. *In re COH*, 495 Mich 184, 187-188, 208; 848 NW2d 107 (2014). With respect to Docket No. 312691 and the adoption issue, our Supreme Court remanded the matter to us for consideration of Scribner's appeal relative to the trial court's rejection of Scribner's argument that the MCI superintendent had improperly denied her request for consent to adopt the children. *Id.* at 208. We now affirm the trial court's ruling and the superintendent's decision concerning Scribner's request for consent to adopt.

The underlying facts and procedural history of this case were extensively set forth in our prior opinion and by the Supreme Court in its opinion, focusing primarily on the guardianship matter. Given the remand order, we turn our attention to the adoption issue and attendant facts. A preliminary adoption family assessment prepared by Bethany Christian Services (BCS) recommended that Scribner's petition for consent to adopt the four minor children be denied. The assessment noted that the children had expressed a wish to remain in the care of their foster parents. The foster parents also sought to adopt the children. The assessment further indicated that the trial court, in denying Scribner's earlier guardianship petition, had found that it was not entirely clear that Scribner would keep the children away from their birth parents, whose parental rights had been terminated. The assessment additionally provided that the children's behavior regressed after they had visited with Scribner and that the children revealed that they did not feel safe with Scribner. The assessment also noted that the children had bonded with their foster parents and had made significant progress since being placed in their home.

The MCI superintendent issued a decision denying Scribner's request for consent to adopt the children. The superintendent noted that various factors had been considered. The MCI superintendent observed that the children had special needs resulting from the chronic neglect they had suffered in their birth home and that it was unknown whether Scribner could meet those needs on a permanent basis. The superintendent indicated that the children had resided in their foster home for more than three years, had overcome symptoms of anxiety after being removed from their birth home, had bonded with their foster parents and desired to be adopted by them, and had developed ties in the community. The MCI superintendent found that removing the children from their foster home and placing them with Scribner in Florida would be traumatic.

Scribner challenged the superintendent's decision in the trial court, arguing that there was clear and convincing evidence that the decision was arbitrary and capricious and petitioning the court to approve her request to adopt the children. The trial court conducted a hearing on the matter, which hearing spanned four days. We thoroughly discuss the superintendent's testimony at the hearing later in this opinion when analyzing the issues posed on appeal. The trial court issued an initial decision rejecting Scribner's challenge of the superintendent's determination, but it withdrew that decision after additional information became available. In September 2012,

---

[1] Docket Nos. 309161 and 312691 had been consolidated by this Court. *In re COH, ERH, JRG, and KBH Minors*, unpublished order of the Court of Appeals, entered March 26, 2013 (Docket Nos. 309161 and 312691).

the trial court issued an amended opinion and order, upholding the MCI superintendent's decision and denying Scribner's petition to adopt the children. The court found that the superintendent's decision was supported by: testimony from the children's counselor that the children would be traumatized by a separation from their foster parents; the fact that the children's behavior had improved significantly since their placement with the foster parents; the children's expressed preference to remain with their foster parents; and the children's improved school performance since the placement with their foster parents. The trial court rejected Scribner's assertion that the MCI superintendent's decision was clearly and convincingly arbitrary and capricious. The court carefully considered each of the myriad arguments presented by Scribner in support of her challenge and found them all to lack merit. We note that the minor children have now been in the care of their foster parents for over six years.

"The MCI superintendent represents the state of Michigan as guardian of all children committed to the state by a family court after termination of parental rights." *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008), citing MCL 400.203. "The superintendent of the [MCI] or his or her designee is authorized to consent to the adoption . . . of any child who may have been committed to the institute." MCL 400.209(1). "Consent by the superintendent to the adoption of a state ward is required before the family court can approve a prospective adoption." *In re Keast*, 278 Mich App at 423, citing MCL 710.43(1)(b). MCL 710.45(1) provides that a court is not permitted to allow the filing of an adoption petition unless the petition is accompanied by the consent required under MCL 710.43(1)(b) or, where no consent was forthcoming, accompanied by a motion brought under MCL 710.45(2) challenging the denial of consent. MCL 710.45(2) states that "[i]f an adoption petitioner has been unable to obtain the consent required by section 43(1)(b) . . ., the petitioner may file a motion with the court alleging that the decision to withhold consent was *arbitrary and capricious*." (Emphasis added.) "Unless the petitioner establishes by *clear and convincing evidence* that the decision to withhold consent was arbitrary and capricious, the court shall deny the motion described in [MCL 710.45(2)] and dismiss the petition to adopt." MCL 710.45(7) (emphasis added).

In *In re Keast*, 278 Mich App at 423-425, the panel discussed the appropriate standard of review and the principles found in MCL 710.45, stating:

> Pursuant to MCL 710.45, a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petitioner has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious. Whether the family court properly applied this standard is a question of law reviewed for clear legal error.
>
> . . .
>
> [T]he family court is not permitted to decide the adoption issue de novo, but rather must determine whether there is clear and convincing evidence that the decision maker acted arbitrarily and capriciously. The generally accepted meaning of "arbitrary" is "determined by whim or caprice," or "arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." The

-3-

generally accepted meaning of "capricious" is "apt to change suddenly; freakish; whimsical; humorsome."

> The initial focus of the hearing is on the reasons given for withholding consent to the adoption. It is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously. [Citations and internal quotation marks omitted; final ellipsis in original.]

In *In re Cotton*, 208 Mich App 180, 184; 526 NW2d 601 (1994), this Court similarly explained:

> The fact that the Legislature in drafting the statute limited judicial review to a determination whether consent was withheld arbitrarily and capriciously, and further required that such a finding be based upon clear and convincing evidence, clearly indicates that it did not intend to allow the probate court to decide the adoption issue de novo and substitute its judgment for that of the representative of the agency that must consent to the adoption. Rather, the clear and unambiguous language terms of the statute indicate that the decision of the representative of the agency to withhold consent to an adoption must be upheld unless there is clear and convincing evidence that the representative acted arbitrarily and capriciously. Thus, the focus is not whether the representative made the "correct" decision or whether the probate judge would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision. Accordingly, the hearing under § 45 is not, as petitioners seem to suggest, an opportunity for a petitioner to make a case relative to why the consent should have been granted, but rather is an opportunity to show that the representative acted arbitrarily and capriciously in withholding that consent. It is only after the petitioner has sustained the burden of showing by clear and convincing evidence that the representative acted arbitrarily and capriciously that the proceedings may then proceed to convincing the probate court that it should go ahead and enter a final order of adoption.

Accordingly, the question properly framed is not whether Scribner should have been granted consent to adopt or whether she was worthy of adopting the children, but whether there was clear and convincing evidence that the superintendent acted arbitrarily and capriciously in withholding consent, which was withheld, effectively, on the basis that it was in the best interests of the children to be adopted by the foster parents. We hold that the MCI superintendent did not reach his decision by whim or caprice, nor was his determination freakish, whimsical, or humorsome. The superintendent's grounds for denying Scribner's request for consent to adopt, and the trial court's reasoning for upholding the superintendent's decision, were sound and valid. There was not a complete absence of any good reason to withhold consent. And the trial court properly applied the standard of review.

Scribner argues that the trial court erred in holding that the superintendent's decision was not arbitrary and capricious, given that the court did not correctly apply the arbitrary and capricious standard, where the superintendent did not have all of the relevant facts when making

his decision, and where much of the information that he did have was inaccurate. Therefore, according to Scribner, the superintendent, absent complete and correct information, could not have considered each child's individual circumstances and could not have provided good reasons for denying consent.

The MCI superintendent gave exhaustive testimony at the court hearing, which we shall review. He acknowledged that he did not meet with Scribner or the children before rendering his decision. The superintendent testified that he reviewed the preliminary adoption assessment. He indicated that if Scribner disputed the statement that she had not met the youngest child before the child entered foster care, the dispute should be resolved. The superintendent also conceded that a case conference report by BCS indicated that Scribner had maintained that she had a relationship with the children before the children were placed in foster care. The superintendent further agreed that his decision stated that Scribner had only a limited relationship with the children. He testified that he did not have information regarding how much time Scribner in fact spent with the children. The superintendent stated that he wrote in his decision that it was unknown if Scribner could care for the children on a full-time permanent basis because she had never done so, notwithstanding the fact that she had indicated that she was willing to do so. He did not deny that Scribner's training as a registered nurse would likely help her in meeting the children's needs, as would a good school system. The superintendent testified that he had no reason to dispute the information that Scribner gave to BCS.

The MCI superintendent acknowledged that he rescinded his original consent decision when he learned that the foster parents had been the subject of licensing and protective services investigations because they used corporal punishment. The superintendent testified that he relied on reports from the foster care worker, the adoption worker, and the Court Appointed Special Advocate (CASA) worker as support for his statement in his amended consent decision that the children had made significant progress after being placed with their foster parents. The superintendent conceded that before making his original decision he was not aware of a report from a therapist who opined that the children would not be traumatized by a move to Florida, but he had also reviewed a report from the children's regular therapist who indicated that such a move would be traumatic. The superintendent testified that he partially based his conclusion that a move to Florida would be traumatic for the children on the fact that the children had already been removed from their mother's home due to abuse and neglect, and that the children had been together in the foster home for 3 ½ years, forming a strong bond with their foster parents. He recognized that the children could likely adjust to living with Scribner in Florida, but opined that the harm of moving them outweighed any benefit in doing so.

The superintendent stated that he based his conclusion that the children had a significant psychological relationship with their foster parents, but not with Scribner, on information he received from various caseworkers, and in particular the CASA worker, who told him that some of the children woke up crying while visiting Scribner because they wanted to return to their foster home. The superintendent testified that he based his conclusion that the children had made significant progress in school and had established community ties after they entered foster care on reports from caseworkers; he believed that the children should be allowed to maintain that progress. He did not recall whether he had personally reviewed school records.

The MCI superintendent felt that he could consider the expressed preference of a child regardless of the child's age. He noted that by statute a child of at least 14 years of age must consent to adoption, see MCL 710.43(2), but he did not believe that he was precluded by statute or policy from considering the opinion of children who were under 14 years of age. The superintendent testified that he did not speak with the children directly regarding their wishes.

As indicated earlier, the superintendent's primary reasons for denying Scribner's petition to adopt were the children's strong attachment to their foster family, their ties to school and the community, the progress they had made while in foster care, and their desire to remain with their foster family.

On cross-examination by the guardian ad litem, the superintendent stated that he found both Scribner and the foster parents to be suitable candidates to adopt the children and that he did not reject Scribner's petition because of anything negative about her. The superintendent reiterated that his decision was based heavily on the fact that the children had been in the foster home for some time, they had thrived in the environment, and they had developed ties to the family. The superintendent was recalled later in the hearing process. He acknowledged that he had not had access to certain information at the time he made his original decision, but he declared that none of the information he had learned since that time caused him to change his stance.

Scribner argues that the superintendent's statement that he did not change his mind after receiving additional information established that his ultimate decision was arbitrary and capricious. However, we disagree with that logic, and the trial court was entitled to find the superintendent's testimony credible. The superintendent provided cogent reasons for his decision to deny Scribner's petition. Scribner disagrees with the trial court's decision, but that disagreement does not establish error on the part of the court. While there may have been problematic and questionable aspects of the superintendent's decision-making process, the superintendent, simply put, did not act arbitrarily and capriciously in withholding consent, and there certainly was not clear and convincing evidence of an arbitrary and capricious decision justifying reversal. Once again, we conclude that the MCI superintendent did not reach his decision by whim or caprice, that his determination was not freakish, whimsical, or humorsome, that the grounds for the superintendent's decision were not devoid of any good reason to withhold consent, and that the trial court properly applied the standard of review. Also, there is nothing to indicate that the circumstances of any of the children individually dictated a different conclusion.

Scribner notes that the trial court relied on the opinion of the children's therapist and the opinion of the CASA worker, and that had those opinions been admitted into evidence it is possible that she could have used them to impeach the MCI superintendent's testimony. As Scribner acknowledges, however, the MCI superintendent testified that he reviewed both opinions.

Scribner next argues that BCS and the MCI superintendent were biased and were inflexibly determined to deny her petition to adopt the children, thereby acting in a manner that violated her constitutional right to due process. This Court reviews de novo constitutional issues. *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 558; 737 NW2d 476 (2007). Scribner

-6-

asserts that because BCS had a financial interest in placing the children in Michigan, bias must be imputed to BCS given that it had a pecuniary interest in the outcome of the proceeding. And the MCI superintendent's acceptance of the BCS recommendation therefore resulted in an outcome that was arbitrary and capricious. However, there is an absolute dearth of evidence in the record suggesting that BCS considered in any way its financial position when making its recommendations. The director of BCS's Grand Rapids office testified that a discussion of finances is never part of an adoption decision. Scribner points to no evidence that contradicts this testimony.

Similarly, Scribner's assertion that the superintendent showed improper favoritism to the foster parents is without foundation in the record. The superintendent testified that he had no personal animosity against Scribner and that he did not show any favoritism toward the foster parents. Instead, it was contemplation of the surrounding circumstances that drove the superintendent's decision. The essence of Scribner's argument is that because she was qualified to adopt the children, the recommendation by BCS that the foster parents' petition to adopt be granted and the MCI superintendent's acceptance of that recommendation mandate a conclusion that BCS and the superintendent were not impartial. This argument is simply not supported by the record. And the premise is not legally sound, considering that the threshold question was not whether consent should have been granted in light of Scribner's qualifications, but whether the superintendent acted arbitrarily and capriciously in withholding consent. *In re Keast*, 278 Mich App at 425 ("It is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously."). Given the failure of Scribner's arguments underlying her due process claim, the due process argument necessarily fails.

Scribner next argues that the MCI superintendent and BCS violated Scribner's constitutional right to fair and just treatment by conducting only a limited investigation, by making decisions on incomplete and inaccurate information, and by failing to contact Scribner. Scribner additionally maintains that both the MCI superintendent and BCS violated MCL 722.954a(5), which provides that a relative must be given "special consideration" when determining the placement of a child. In a supplemental brief, Scribner argues that the Supreme Court's decision in *In re COH,* 495 Mich 184, which held that MCL 722.954a does not create a preference for relatives when appointing a guardian for a child under MCL 712A.19c(2), does not control the outcome of this appeal.

Again, this Court reviews constitutional issues de novo, *Goldstone*, 479 Mich at 558, and we likewise review de novo an issue of statutory interpretation, *In re COH,* 495 Mich at 191. The Michigan Constitution provides that "[t]he right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Const 1963, art 1, § 17. To the extent that this clause applies in the context of this case, we conclude that Scribner was not denied fair and just treatment for the reasons already articulated in this opinion and given that the superintendent and the trial court acted in accordance with the governing statutes. Reversal is unwarranted.

MCL 722.954a sets forth a preference for relatives when placing a child after the initial removal of the child from parental custody. MCL 722.954a(5) provides that "[b]efore determining placement of a child in its care, a supervising agency shall give special

consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs." Subsection (5) of MCL 722.954a was added to the statute when it was amended by 2010 PA 265, becoming effective on December 14, 2010. In the appeal of the guardianship matter, our Supreme Court relied on the version of MCL 722.954a in effect before December 14, 2010, "[b]ecause the trial court decided the issues relevant to the children's initial placement before December 14, 2010." *In re COH*, 495 Mich at 193 n 5. Of course, the same analysis or theory applies now; the date of the initial placement did not magically change. The Supreme Court held that MCL 722.954a "applies from the moment a child is removed from his or her parents' care, i.e., *before* any placement decision is made, and, consequently, the requirements of MCL 722.954a are intended to guide the DHS's initial placement decision." *Id.* at 195. The Court elaborated:

> [T]he preference for placement with relatives created in MCL 722.954a does not apply outside the time period for determining a child's initial placement immediately after removal and, therefore, does not apply to a court's decision to appoint a guardian under MCL 712A.19c(2) after parental rights are terminated. Accordingly, although the Court of Appeals accurately concluded that MCL 722.954a creates a statutory preference for placement with relatives, the plain language of MCL 722.954a limits the applicability of the preference to only the initial stage of the process, i.e., immediately after a child is removed from his or her parents' care and during the statutory review period established in MCL 722.954a(3). Therefore, we agree with the Court of Appeals' conclusion in *In re AEG & LEG,* unpublished opinion per curiam of the Court of Appeals, issued November 7, 2013 (Docket No. 316599), that the plain language of MCL 722.954a "indicates that the Legislature intended the statute to provide procedural requirements where a child is removed pursuant to a child protective proceeding," but that there "is no indication that [MCL 722.954a] was intended to apply to . . . decisions after termination," which includes a court's decision regarding a guardianship petition under MCL 712A.19c(2). [*In re COH*, 495 Mich at 198-199 (ellipsis and second alteration in original).]

Clearly, this analysis is equally applicable to adoption petitions after parental rights have been terminated. The 2010 amendment, even if applicable here, would not later that conclusion, given the Supreme Court's following comments in *In re COH* about the amendment:

> As noted, the Legislature amended MCL 722.954a, effective December 14, 2010. 2010 PA 265. We also note that as part of the 2010 amendments, the Legislature added MCL 722.954a(5), which expressly requires the DHS to "give special consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs" and requires the DHS to do so " *[b]efore* determining placement of a child" in the DHS's care. Emphasis added. Accordingly, although we do not expressly apply subsection (5) in this case, we note that our analysis is not inconsistent with this new statutory language, because subsection (5) expressly applies *before* the initial placement decision is made. [*In re COH*, 495 Mich at 198 n 7.]

Accordingly, any claim by Scribner that the superintendent's decision was arbitrary and capricious or that BCS's investigation was deficient because there was a failure to give Scribner the preference in MCL 722.954a accorded to relatives lacks merit; MCL 722.954a simply has no relevance to the post-termination adoption proceedings. Scribner argues that the Supreme Court's interpretation of subsection (5) of MCL 722.954a, quoted above, is dicta and is wrong. We, however, are not prepared to disregard the Supreme Court's view and, if the footnote is not dicta, we are bound by the analysis and are certainly not at liberty to ignore it. *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009).

Scribner finally argues that the trial court erred in partially denying her motion to compel discovery, thereby rubber-stamping the superintendent's decision without having access to complete and accurate information about the children's individual circumstances. This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for discovery. *Szpak v Inyang*, 290 Mich App 711, 713; 803 NW2d 904 (2010). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011).

Michigan is strongly committed to a far-reaching and open discovery practice. *Eyde v Eyde*, 172 Mich App 49, 54; 431 NW2d 459 (1988). The rules of discovery should be liberally construed in order to further the ends of justice. *Id.* As a general rule, a party may obtain discovery of any non-privileged matter that is relevant to the subject matter of the pending case. MCR 2.302(B)(1). MCR 3.800(A) provides that adoption proceedings are governed by the general court rules, except as modified by MCR 3.801 through MCR 3.807. Logically, then, the court rules governing discovery typically apply to adoption proceedings.

We hold that Scribner has not established that the trial court abused its discretion by ruling as it did. Scribner acknowledges that the court ordered the MCI superintendent to make available to Scribner's counsel for inspection the MCI's entire file on the children. She complains, however, that had she had access to all of the information sought, such as additional facts about the foster family and various policies, she might have been able to present more compelling arguments or impeach witnesses. We conclude that Scribner's argument is ultimately based on speculation and seeks to engage in a fishing expedition. There is no indication that there exist facts or information that would circumvent or undermine the trial court's ruling or that would constitute clear and convincing evidence that the MCI superintendent's decision was arbitrary and capricious. Reversal is unwarranted.

We affirm.

/s/ Michael J. Talbot
/s/ Michael J. Riordan

-9-