# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CL, Minor.

UNPUBLISHED
June 9, 2016

No. 329371
Crawford Circuit Court
Family Division
LC No. 14-000341-AF

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

In this adoption dispute, the trial court upheld the decision of the Michigan Children's Institute Superintendent denying petitioners' request for consent to adopt a minor child, CL. Petitioners are the paternal grandmother and step-grandfather of the child. We affirm.

## I. BACKGROUND FACTS

In February 2012, the Department of Health and Human Services (DHHS)[1] received a complaint that the child was being abused and neglected by his father. The parental rights of the child's mother had been terminated. In the course of removing CL from his father's custody, which involved Child Protective Services (CPS) personnel and law enforcement, CL's father was killed.

Petitioners were vacationing in Florida at that time, but immediately returned to Michigan after receiving the news that CL's father had been killed. On arrival, they expressed an interest in having the child placed with them. However, the DHHS discovered that CL's grandmother's name had been placed in the Child Abuse and Neglect Registry in 1991 and 1994, which prevented placement with petitioners. The grandmother took steps to have her name expunged from the registry, including contacting an attorney.

The superintendent, in the written decision[2] denying petitioners' request for consent to adopt, noted that CL's foster parents had demonstrated a strong ability to meet his physical and

---

[1] Then the Department of Human Services.

[2] The superintendent expanded upon his reasoning at a later hearing.

emotional needs. He also explained that there was troubling information about CL's grandmother. He noted that even though the grandmother's name had been expunged from the central registry, "this does raise questions about her suitability to provide care for a child." Finally, he stated that CL had formed a strong psychological attachment to his foster parents. The matter was appealed to the circuit court.

The trial court, citing MCL 710.45(7) and (8) and *In re Cotton*, 208 Mich App 180, 185-187; 526 NW2d 601 (1994), noted that the "standard for a Sec. 45[3] hearing has long been that [t]he court must determine whether the petitioner has shown by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious." The trial court referred to the Supreme Court's decision in *In re CW*, 488 Mich 935; 790 NW2d (2010), in which the majority adopted Michigan Court of Appeals Judge Douglas Shapiro's dissenting opinion in this Court's decision, and cited to a portion of Justice Maura Corrigan's concurring opinion wherein the justice observed that Judge Shapiro "correctly recognized . . . [that] the trial court incorrectly concluded that it was essentially powerless to consider the accuracy of the information relied on by the Superintendent or the nature of the facts he failed to consider." *Id*. at 935-936.

The trial court noted that petitioners' case focused on the presence of good reasons to grant them consent to adopt, which, the court reasoned, missed the mark in terms of the legal questions to be resolved. The court noted that petitioners did "raise some aptly considered points relative to what information the superintendent relied on," and opined that "some of the positions taken by [the DHHS], the adoptive agency, and the superintendent[] stretch credibility." For example, the court stated that the claim that CL shared no strong bond with petitioners was "wholly unsupported by the facts." In addition, the court stated that the claim that CL's grandmother did not act diligently to get her name expunged from the central registry seemed "equally incredulous." Nevertheless, the court stated that these were credibility determinations that it should not revisit.

The court concluded that petitioners had not met their burden of demonstrating that the superintendent's decision was arbitrary and capricious.

Whether the trial court undertook a proper review of the superintendent's decision under MCL 710.45 is "a question of law reviewed for clear legal error." *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008). "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

"Judicial review of the withholding of consent to an adoption is governed by MCL 710.45 . . . ." *In re Cotton*, 208 Mich App at 183. Where consent has not been granted, "the petitioner may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious." MCL 710.45(2). "Unless the petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court

---

[3] MCL 710.45.

shall deny the motion described in subsection (2) and dismiss the petition to adopt." MCL 710.45(7).

When reviewing the superintendent's decision, the focus of the circuit court "is not whether the representative made the 'correct' decision or whether the [court] would have decided the issue differently than the representative, but whether the representative acted arbitrarily and capriciously in making the decision." *In re Cotton*, 208 Mich App at 184. The reviewing court must focus on the "reasons given by the representative for withholding the consent to the adoption," and "it is the absence of any good reason to withhold consent, not the presence of good reasons to grant it, that indicates that the representative was acting in an arbitrary and capricious manner." *Id.* at 185.

> The generally accepted meaning of "arbitrary" is "determined by whim or caprice," or "arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." The generally accepted meaning of "capricious" is "apt to change suddenly; freakishly; whimsical; humorsome." [*In re Keast*, 278 Mich App at 424-425 (quotation marks and citations omitted).]

In *In re CW*, unpublished opinion per curiam of the Court of Appeals, issued February 16, 2010 (Docket No. 292866), Judge Shapiro explained that the determination of whether the superintendent acted arbitrarily and capriciously "can only be achieved by examining whether [the superintendent's] reasons were invalid in light of the evidence." *Id.*, slip op at 3 (SHAPIRO, J., dissenting). "[A] failure to do so," Judge Shapiro explained, "would result in review of an agency representative's decision under MCL 710.45(5) . . . amount[ing] to nothing more than a rubber stamp of whatever reason the representative articulated." *Id.* (quotation marks and citation omitted). See also *In re CW*, 488 Mich at 941 (CORRIGAN, J., concurring) (noting that "a reviewing court may address whether the bases for [the superintendent's] decision are without factual support" (quotation marks and citation omitted).

In his written decision, the superintendent stated that CL "was not placed in the home of [the grandparents] initially due to the fact that [the grandmother] was placed on [the] central registry following two separate CPS complaint investigations, which were substantiated." The superintendent stated that although the grandmother had since been removed from the registry, the information "does raise questions about her suitability to provide care for a child." The superintendent also noted that CL had a "very strong psychological attachment to the foster parents" and that it "would clearly not be in his best interests to be removed from his current placement." The superintendent noted that "[t]his is . . . strongly supported by a psychological evaluation completed by Dr. William Simmons in April of 2013." The superintendent further noted that "there was troubling information about the grandmother . . . ."

At the hearing regarding the petitioners' motion, the superintendent expanded upon his reasoning, stating that the grandmother's psychological evaluation showed that she would likely lack "[i]nsight and self-understanding . . . ." He noted that the report mentioned her failure to take responsibility with regard to her son's problems; the superintendent stated, "And it's that kind of way of functioning that would cause concerns about her attending appropriately to a

child's needs . . . ." The superintendent noted that the report mentioned CL's "deep and sustained attachment to the foster parents . . . ."

The psychological evaluation supports the superintendent's testimony. In addition, the superintendent noted the significant regression CL experienced upon resuming visitation with the grandparents; this regression is evidenced in record documentation, which mentions a lack of structure and inappropriate comments at the grandparents' home.

Given the applicable standards of review, we simply cannot find a basis for reversal on this record. The circuit court did not err in holding that the superintendent's decision was not arbitrary and capricious. There was not an "absence of any good reason to withhold consent . . . ." *In re Cotton*, 208 Mich App at at 185.

Petitioners also argue that the agency and the court erred in failing to follow a statutory preference for placement of the child with a relative, despite numerous relatives other than petitioners having come forward with a desire to care for CL.[4] Petitioners' argument is inapposite, however. This appeal involves a section 45 hearing, which involves determining whether the agency's decision to withhold consent to adopt was arbitrary and capricious. As noted above, it was not. The other relatives mentioned by petitioners were involved in the protective custody case and were *not* parties to the section 45 hearing at issue. They were free to attempt to adopt and to file their own requests for a section 45 hearing if the attempt was unsuccessful. Under the circumstances, we find no basis for reversal.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

[4] We note that "[t]he preference for placement with relatives created in MCL 722.954a does not apply outside the time period for determining a child's initial placement immediately after removal . . . ." *In re COH*, 495 Mich 184, 198; 848 NW2d 107 (2014).