*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. MCCARY-EDWARDS, Minor.

UNPUBLISHED
June 27, 2019

No. 347530
Wayne Circuit Court
Family Division
LC No. 18-000657-NA

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother ("respondent") appeals as of right the trial court's order terminating her parental rights to the minor child pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). We affirm.[1]

The child was severely injured on April 9, 2018, while in the care of respondent and the child's father. The child was approximately six months old and had previously been diagnosed with osteopenia of prematurity, a condition that causes brittle bones. His ribs had been fractured in the past from routine care. Respondent and the father had jointly cared for the child throughout the day on April 9. They were the child's only care providers that day. Respondent left her apartment with her cousin at approximately 5:00 p.m. that evening, leaving the child in the father's sole care. According to respondent, there was nothing unusual about the child when she left. At approximately 7:00 p.m., the father called 911 to report that the child was unresponsive and not breathing. The father claimed that he performed cardiopulmonary resuscitation (CPR) on the child. The child was transported to the hospital by ambulance.

The child was diagnosed with rib fractures that could have been caused by the father's CPR efforts, but he also had severe head and brain injuries unrelated to the child's osteopenia of

---

[1] The trial court also terminated the parental rights of the child's father, but he has not appealed that decision.

prematurity condition.[2] The child had internal bleeding of the brain and injuries to the spinal cord that were indicative of violent movement associated with shaken baby syndrome. The child also had a skull fracture that was likely caused by his head impacting a hard surface. There was hemorrhaging in both retinas and one of the retinas was detached. Significant force or trauma would have been necessary to cause the injuries, which were consistent with non-accidental physical abuse, such as violent shaking. The child required life support, and it was unclear whether he would survive his injuries, but he was eventually able to be stabilized.

Neither parent ever explained how the child was injured. Throughout the proceedings, the father gave differing accounts of the events leading up to the child's hospitalization, including lying about being at work for most of the day. Before the termination hearing, the father told a caseworker that the child was nonresponsive or lifeless when respondent handed him the child before she left the apartment. On other occasions he claimed that shortly after respondent left the apartment with her cousin, he gave the child some water and then put the child back in his bassinette and the child's lips started changing color about 10 minutes later, prompting him to start performing CPR. At the termination hearing the father maintained that he did not injure his son. When respondent initially met with a social worker, she quickly announced that she did not cause the child's injuries because she was not at home. According to the caseworker, respondent frequently laughed at inappropriate times while discussing the child, including when she denied injuring the child.[3] Respondent attributed the laughing to her nervousness. Respondent and the father were no longer living together at the time of the termination hearing. Respondent acknowledged that the child had been physically abused, and that the only people who were there to physically abuse the child on the day of his injuries were she and the father, but she was unwilling to concede that the father could have caused the child's injuries because she did not see him harm the child.

The trial court found that the child was severely injured while in the parents' care and that the force necessary to inflict the child's injuries indicated that there was "an element of anger involved." The court also found that the injuries were inflicted within the timeframe during which both respondent and the father had the ability to cause the injuries. The court found that someone knew more than they were saying, and that it was not able to return the child to a situation where no responsible parent was willing to protect the child. The court found that the statutory grounds for termination were established by clear and convincing evidence, and that termination of respondent's parental rights was in the child's best interests.

---

[2] Respondent does not contend that the child's skull fracture and related severe head and brain injuries were due to the child's osteopenia, she agrees the evidence establishes that he was physically abused.

[3] The caseworker testified that "[e]very interaction I've ever had with [respondent] she's always laughing." Respondent would say that she knew she did not "do it," but she never made an allowance or offer the possibility that the father did it either.

## I. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree. Petitioner has the burden of proving a statutory ground for termination by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review the trial court's factual findings for clear error. MCR 3.977(K); *In re Mason,* 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Id.* Deference is given to the trial court's assessment of the credibility of the witnesses who appear before it. *In re Newman*, 189 Mich App 61, 65; 472 NW2d 38 (1991).

The trial court terminated respondent's parental rights under MCL 712A.9b(3)(b)(*i*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*), which permit termination under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life-threatening injury.

Termination of parental rights need only be supported by a single statutory ground. *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015).

Turning first to §§ 19b(3)(b)(*i*), (k)(*iii*), and (k)(*iv*)[4], respondent does not dispute that the child was physically abused, or that the abuse qualified as severe, was life-threatening, and resulted in the loss or serious impairment of an organ or limb. Rather, she argues that termination of her parental rights under these grounds was improper because the evidence did not show that she was the person who injured the child, who was in the father's sole custody when the father contacted 911 to report the child's injuries. We disagree.

Contrary to respondent's argument, the evidence did not establish that only the father could have caused the child's injuries. There were conflicting accounts of when the child's injuries were discovered. Although the evidence indicated that the father reported the injuries during the time the child was in his sole care, medical evidence did not rule out the possibility that the child could have been injured before the child was placed in his sole care. Because respondent and the father were the child's only caregivers during the period of time the child's injuries could have been sustained, neither one of them could be excluded as the perpetrator.

In addition, although respondent claimed she was not at home when the child was unable to breathe and she denied inflicting his injuries, a caseworker found it "odd" that upon meeting respondent at the hospital, respondent repeatedly stated that she was not present and did not injure the child, but was laughing while she said this. Respondent attributed the laughing to her nervousness. Moreover, the father gave a statement that the child was lifeless when respondent turned the child over to him before leaving the home. These circumstances and differing accounts were reasons to question the veracity of respondent's claims that she did not injure the child, or know how he was injured.

In *In re Ellis,* 294 Mich App 30, 35-36; 817 NW2d 111 (2011), this Court held "that termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." In that case, this Court explained that "[w]hen there is severe injury to an infant, it does not matter whether respondents committed the abuse at all, because under these circumstances there was clear and convincing evidence that they did not provide proper care." *In re Ellis*, 294 Mich App at 33.

---

[4] In its brief on appeal, petitioner "agrees there was insufficient evidence to terminate [respondent's] parental rights under MCL 712A.19b(3)(b)(*i*), (k)(*iii*), (k)(*iv*), and (k)(*v*)," based on its apparent misapprehension that finding the existence of these statutory grounds is only possible where clear and convincing evidence demonstrates which of the two parents, if not both, was the abuser. We do not take petitioner's concession as dispositive because, as we discuss herein, our analysis of the evidence and the applicable law illustrates that petitioner is incorrect. And even if petitioner's concession were correct, petitioner accurately notes that there is clear and convincing evidence of grounds to terminate respondent's parental rights under MCL 712A.19(3)(g) and (j), and only one statutory ground is required for the termination of parental rights. *In re Gonzales/Martinez*, 310 Mich App at 431. Therefore, the trial court did not clearly err in determining that statutory grounds exist to terminate respondent's parental rights.

Like in *In re Ellis*, 294 Mich App at 35, the evidence showed that the child was severely injured during the period of time the child was being cared for by respondent and the father, and the evidence supported an inference that one of the parents perpetrated the abuse and the other parent failed to prevent it. Thus, it does not matter which parent actually caused the child's injuries. Although the trial court did not specifically recite § 19b(3)(b)(*ii*) in its decision, that subsection applies when a parent fails to protect a child from physical injury or abuse, respondent had notice of that subsection because it was recited in the petition, see *In re Perry*, 193 Mich App 648, 651; 484 NW2d 768 (1992), and the trial court's substantive findings indicate that it found that one parent caused the abuse and the other parent failed to protect the child from the abuse. The evidence also supported the conclusion that there was a reasonable likelihood the child would suffer from injury or abuse in the foreseeable future if placed in respondent's home because, as the trial court pointed out, "no parent, no responsible parent has said that's my child, I'm going to protect him before I protect myself." Accordingly, the trial court did not clearly err by terminating respondent's parental rights under §§ 19b(3)(b)(*i*), (b)(*ii*), (k)(*iii*), (k)(*iv*), and (k)(*v*).

Respondent also argues that the evidence did not support termination of her parental rights under § 19b(3)(g). We again disagree. The child was severely injured after having been in the joint care of respondent and the child's father. The trial court found that both parents knew more about the child's injuries than they were willing to admit, and that their failure to take responsibility for what happened to the child showed that they were unable to act in the child's interests to protect the child. Although respondent maintained that she did not injure the child, and she was willing to admit that the child had been physically abused, she refused to acknowledge that if she did not cause the child's injuries, the child's father must have done so. Even though respondent eventually separated from the father after this incident, she did so primarily to improve her chances for regaining custody, not because she realized it was necessary to protect the child. Accordingly, the trial court did not clearly err by finding that there was clear and convincing evidence that respondent was unable to provide proper care and custody for the child and there was no reasonable likelihood that she would be able to do so within a reasonable period of time, considering the child's age.

The evidence also supported termination of respondent's parental rights under § 19b(3)(j). Respondent argues that the child was not reasonably likely to be harmed if returned to her custody because she was no longer living with the father and did not intend to plan a future with him. However, the trial court did not clearly err by finding that the evidence showed that the child could have been injured during the time period that respondent was caring for him, or by finding that respondent knew more about the child's injuries than she had disclosed. Even if it was the father who harmed the child, respondent failed to show that she was able to protect the child from abuse in the future. Although respondent was no longer with the father, her reluctance to acknowledge her need to protect the child first placed the child at an unreasonable risk of harm if the child was returned to her home.

## II. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the child's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We also review a trial court's best-interest decision for clear error. MCR 3.977(K); *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

Whether termination of parental rights is in a child's best interests need only be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). In deciding whether termination of parental rights is in a child's best interests, a court may consider the child's bond to the parent, the parent's parenting abilities, and the child's need for permanency, stability, and finality. *In re Olive/Metts,* 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court may also consider the advantages of an alternative home for the child. *In re Foster,* 285 Mich App 630, 634-635; 776 NW2d 415 (2009).

Respondent argues that the trial court erred by finding that termination of her parental rights was in the child's best interests because the child was living with a relative, his paternal grandmother. A trial court may order a guardianship in lieu of terminating parental rights if it is in the child's best interests. *In re COH*, 495 Mich 184, 208; 848 NW2d 107 (2014); MCL 712A.19c(2). Although placement with a relative may weigh against termination, a trial court is not required to place a child with a relative in lieu of terminating an unfit parent's rights. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

The parties did not argue that the child's placement with the paternal grandmother was a factor that weighed against termination of parental rights. However, the trial court expressly found that the child needed protection, permanency, and a loving family to care for him, which respondent could not provide. Given the child's young age, adoption would provide the permanency the child needs.

Despite respondent's love for the child, she refused to acknowledge that if she did not cause the child's injuries, the father must have been responsible for the injuries. The child's medical condition was already fragile before he was severely injured and the trial court recognized that the child needed someone who could be trusted to meet his special needs and provide a safe and loving permanent home. The court also observed that respondent had a mental health history for which she had discontinued receiving services, yet witnesses had observed her inappropriately laughing about the child's circumstances and she expressed some anger or frustration at the hearing. Despite respondent's love for the child, given the risks in returning the child to respondent's custody, the trial court did not clearly err by finding that it was in the child's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause