*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. SPARKS, Jr., Minor.

UNPUBLISHED
April 18, 2024

Nos. 367130; 367590
Macomb Circuit Court
Family Division
LC No. 2021-000004-NA

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In Docket No. 367130, respondent-mother appeals as of right an order terminating her parental rights to her minor child, CSJ. In Docket No. 367590, respondent-father appeals as of right the same order, which terminated his parental rights to CSJ.[1] Respondents' respective parental rights were terminated under MCL 712A.19b(3)(c)(*i*) (the conditions leading to the adjudication continue to exist) and (*ii*) (other conditions exist causing the child to come within the court's jurisdiction); (g) (the parent fails to provide proper care or custody); and (j) (reasonable likelihood child will be harmed). We affirm.

## I. BACKGROUND

This matter began when petitioner, the Department of Health and Human Services (DHHS), filed a petition in January 2021. The petition alleged that respondents were "abusing Acid," gave CSJ NyQuil to help him sleep, and respondent-father stated that if Child Protective Services (CPS) brought law enforcement to the home to remove CSJ, he was going to "barricade them in the home and shoot all parties." It was further alleged that respondents had issues with substance abuse, an extensive criminal history, and respondent-mother had a history with CPS, in which prior services were unsuccessful. Further, the petition alleged that CSJ was born with signs of opiate withdrawal. It was requested that the trial court: (1) authorize the petition and take jurisdiction of CSJ, and (2) enter an order removing CSJ

---

[1] The appeals were consolidated "to advance the efficient administration of the appellate process." *In re C Sparks Minor*, unpublished order of the Court of Appeals, entered September 13, 2023 (Docket Nos. 367130; 367590).

from the home under MCL 712A.2(b)(1) and (2). The trial court entered such an order, placing CSJ with DHHS for care and supervision.

The trial court exercised jurisdiction and ordered reasonable efforts toward reunification be made. Respondents were referred to court-ordered services, which included parenting classes; parental visits; individual therapy; stable housing and income; regular drug screens; individual counseling; psychological evaluation; and substance-abuse counseling. Respondents missed most drug screens, tested positive on the screens they did submit to, and were terminated from parenting classes. For over two years, respondents had a number of dispositional hearings. In each, it became clear that respondents made no progress toward addressing the underlying issues which led to CSJ's removal.

In October 2022, DHHS filed a supplemental petition for termination, requesting that the trial court terminate respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j). On the first day of the termination hearing in January 2023, the trial court was made aware of a potential guardianship option with R. Loren, respondent-mother's father. DHHS later informed the trial court that Loren was denied as a relative placement for failing to be forthcoming regarding his criminal history, and his girlfriend, who resided with him, did not provide the necessary criminal background check. Respondents stipulated to the statutory grounds for termination, and the trial court delayed ruling on best interests to allow DHHS to further explore guardianship with Loren.

At the best-interests hearing in June 2023, DHHS expressed concerns with Loren's truthfulness regarding his criminal history, and his girlfriend still had not provided the background check. Loren noted that he began visiting CSJ several months before the best-interests hearing and was unaware he could step forward and request for CSJ to be placed in his care.

The trial court found that CSJ required permanence, which respondents were unable to provide. Further, it found Loren was an unsuitable guardian. The trial court entered an order terminating respondents' parental rights, and finding guardianship with Loren was not in CSJ's best interests. These appeals followed.

## II. BEST INTERESTS

Respondent-mother and respondent-father argue that the trial court clearly erred when it failed to consider a relative placement for CSJ with Loren and found that guardianship with Loren was not in CSJ's best interests. We disagree.

## A. STANDARD OF REVIEW

"[This Court] review[s] for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (cleaned up). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citation omitted). This Court also reviews for clear error a trial court's determination that DHHS made reasonable efforts toward reunification. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). Included in reasonable efforts is identifying relatives able to provide care for a child. See *In re Rood*, 483 Mich 73, 107-109; 763 NW2d 587 (2009).

## B. LAW AND ANALYSIS

The trial court did not clearly err by not considering relative placement of CSJ with Loren, and finding guardianship with Loren was not in CSJ's best interests.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App at 713. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

"A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted). Relative placement is "an explicit factor to consider in determining whether termination [is] in the [child's] best interests[.]" *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

Respondents stipulated to statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j). The issue is whether the trial court clearly erred by not adequately considering Loren for a relative placement of CSJ, and finding guardianship with Loren was not in CSJ's best interests. We find that it did not clearly err.

"Upon removal, as part of a child's initial case service plan . . . , the supervising agency must, within 30 days, identify, locate, notify, and consult with relatives to determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs." MCL 722.954a(2). There is a statutory preference for placing a child with relatives "immediately after a child is removed from his or her parents' care and during the statutory review period established in [MCL 722.954a(5)]." *In re COH*, 495 Mich 184, 198; 848 NW2d 107 (2014).

DHHS filed a petition for removal on January 8, 2021. In its May 14, 2021 report, DHHS highlighted its efforts to locate potential relatives for placement: "[DHHS case worker] has spoken to Mr. Loren, [respondent-mother's] father, and he has expressed interest in possibly providing placement for [CSJ] in the furture [sic]. He stated that he wishes to become relative placement for [CSJ] but that he needs to have shoulder surgery first and recover." The report added:

> [Loren] has expressed interest in possible placement of [CSJ] in the furture [sic]. [DHHS case workers] completed a home visit at Mr. Loren's home and he had stated that he was

in need of shoulder surgery and that he was not sure when he would have it. Mr. Loren was also provided paperwork to gain information to begin the home study on 3/1/21 but has not yet returned it back to the department. Mr. Loren states that he will inform DHHS once he knows what is going to happen with his surgery. [DHHS case workers] followed up with Mr. Loren on 3/8/21 and 3/19/21 to check on the status of the paperwork and gain information on his surgery. Mr. Loren stated he did not have [the paperwork] completed yet and was not sure about his surgery.

DHHS repeated this language in its August 4, 2021, and October 27, 2021 reports. On February 7, 2022, DHHS noted: "No relatives have come forward to be assessed for placement for [CSJ]." DHHS copied the same language to discuss its relative search and engagement efforts in its prepared reports on (1) May 2, 2022; (2) July 25, 2022; and (3) October 21, 2022.

On April 10, 2023, DHHS's report stated:

The maternal grandfather R[.] Loren came forward for placement in August of 2022. At that time, he did not follow through with providing the agency with documents needed to complete relative assessment. He came forward again during the court hearing scheduled on 1/24/2023. A licensing specialist was assigned to complete the [DHHS] Relative Placement Safety Screen. Mr. Loren was denied on 3/16/2023 due to the following reasons: 1) Not being truthful/forthcoming with all criminal history and 2) Failure to provide criminal history clearances for all members of the household.

As these documents show, when CSJ was removed, DHHS explored Loren as a possible placement, although Loren stated that he required shoulder surgery first, and was uncertain when his surgery would occur. DHHS provided Loren with paperwork on March 1, 2021, which he did not complete and return. DHHS followed up with him on March 8, 2021, and March 19, 2021, to check on the status of the paperwork, and to inquire about his surgery and availability. Loren stated that he had not completed the paperwork and did not know when his surgery would occur, but would inform DHHS when he knew. By February 2022, DHHS noted that no relatives came forward for placement. Loren again expressed interest in August 2022 and was again provided paperwork to initiate this process. Testimony indicated that he filled out half of it, which he returned to DHHS. When Loren believed respondents were not progressing toward reunification, he filled out the remainder of the paperwork. In November or December 2022, Loren had a conversation with DHHS about guardianship. Loren finally completed the paperwork provided by DHHS, and submitted it to DHHS in late 2022.

From the time of CSJ's removal, DHHS provided Loren with paperwork and information regarding relative placement, which Loren did not complete. He did not follow up with DHHS to provide information regarding his availability or the completed paperwork. Respondent-mother contends on appeal that DHHS failed to satisfy its statutory duty because it did not follow up with Loren to inform him of his options for placement. The record belies this argument. Loren was given numerous opportunities to initiate the process of relative placement but failed to do so. He did not return paperwork, despite DHHS following up with him. Further, during at least some of these lengthy proceedings, respondents resided in Loren's workshop, indicating that he was easily able to be in contact with DHHS to return the paperwork. Respondent-mother contends DHHS failed to adhere to its statutory obligation under MCL.722.954a(3) (DHHS must notify relatives of a child's removal) and explain the full scope of the situation and its consequences to Loren. The only evidence respondent-mother provides to support her

claim is Loren's statement, "I didn't know about that. I didn't know I could [request to care for CSJ] right away." This statement contradicts DHHS's record from March 1, 2021, in which it noted providing Loren with paperwork to begin a home study, which Loren did not complete.

When Loren did express interest for placement in August 2022, DHHS once again provided him with paperwork, which he did not complete until late 2022. DHHS determined that Loren was not a viable placement because he was untruthful regarding his criminal record, and his girlfriend refused to submit to a background check. It was fully within DHHS's statutory authority to make this determination. DHHS must "determine placement with a fit and appropriate relative who would meet the child's developmental, emotional, and physical needs. . . . [and who] meets all relevant state child protection standards." MCL 722.954a(2). DHHS considered Loren for relative placement, and provided him the necessary paperwork shortly after CSJ's removal. It followed up with Loren several times when it did not hear back from him. The case proceeded for two years, respondents resided in Loren's workshop, and Loren came forward again in August 2022. DHHS provided him paperwork, which he again did not complete and return to DHHS until late 2022. DHHS investigated Loren and found that he did not meet "all relevant state child protection standards." MCL 722.954a(2). The record is clear DHHS met its statutory duty to explore relative placement with Loren, but determined that he was ineligible, in part due to his noncompliance. No statutory violation occurred.

Respondents contend that the trial court erred when it found that relative placement or guardianship with Loren was not in CSJ's best interests. We disagree.

At the best-interests hearing, the trial court stated:

Even if we take [Loren] on his word the Court is also not swayed that [Loren] can meet the emotional/physical needs of this child long-term. And this child is three, so we're talking up to 15 years. The child's age, grandfather's age and the strength of the bond should also be looked at. This is a grandfather who's not until recently been in the child's life. He works full-time, and even with a flexible schedule will have a lot to handle.

Testimony was provided this child does not do well with change. He has had speech delays and other issues which are being addressed by placement. He is regressing in terms of his behaviors, currently having his needs met by placement, and is of an age where adoption is possible.

Given the above, the Court does not find that guardianship is in the child's best interest given the child's needs. A more permanent plan for adoption is better suited for him.

On appeal, respondents conflate relative placement with guardianship, using the terms almost interchangeably. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. [*In re Olive/Metts*

*Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citations omitted).]

CSJ was not placed with Loren at the time of termination because Loren did not complete the required paperwork or follow up with DHHS regarding his availability, despite several attempts by DHHS to obtain this information. When Loren expressed interest again in August 2022, DHHS determined that he did not meet all relevant state child protection criteria pertaining to his failure to disclose his full criminal history and to allow investigation of all residents of his home. At the best-interests hearing, Loren sought guardianship over CSJ, not relative placement. "[T]here is no statutory preference for creating a guardianship with a relative[.]" *In re COH*, 495 Mich at 207-208. Further,

> [a]lthough . . . MCL 722.954a creates a statutory preference for placement with relatives, the plain language of MCL 722.954a limits the applicability of the preference to only the initial stage of the process, i.e., immediately after a child is removed from his or her parents' care and during the statutory review period established in MCL 722.954a(3). [*Id.* at 198.]

Because CSJ was not in relative placement with Loren at the time of the termination, the trial court had no statutory obligation to consider Loren for guardianship. *Id.* Moreover, the trial court explained its reasoning for declining relative placement, noting that its primary concerns with Loren were that he was not in CSJ's life until recently and did not appear bonded with CSJ. The trial court also expressed concern with Loren's ability to provide the care and stability CSJ required. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App at 346 (quotation marks and citation omitted). For these reasons, the trial court did not clearly err by finding that guardianship or relative placement with Loren was not in CSJ's best interests.

## III. CONCLUSION

The trial court did explore relative placement with Loren and did not clearly err by finding that guardianship or relative placement with Loren was not in CSJ's best interests. We affirm.

/s/ Michael J. Riordan
/s/ Anica Letica