*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FERNALD, Minors.

UNPUBLISHED
February 23, 2026
11:51 AM

No. 375421
Wayne Circuit Court
Family Division
LC No. 2017-000682-NA

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this child protective proceeding, respondent-appellant-mother appeals as of right the trial court's order assuming jurisdiction over the minor children, COF, DAF, HIF, and JAF, under MCL 712A.2(b)(1) and (b)(2). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In March 2024, Children's Protective Services ("CPS") received a complaint alleging that the children's father, Darryl Fernald, abused respondent by attempting to forcibly take respondent's cell phone to sell for drug money.[1] Fernald was alleged to have leaned against respondent's broken legs, spit in her face, and thrown an alcoholic beverage in her face during the incident. HIF witnessed the incident and was splashed in the face when Fernald threw the beverage. It was further alleged that Fernald pushed HIF, causing her to fall to the floor. During its investigation of the incident, CPS learned of allegations that respondent's legs were previously broken in February 2024 in an incident in which respondent climbed on top of the hood of a van driven by Fernald and he slammed on the brakes causing respondent to fly off the vehicle.

In April 2024, CPS received a second complaint involving a new report of domestic violence at the end of March 2024. It was alleged that Fernald entered respondent's home without permission, argued with her, and threatened to burn down her house if she called the police on

---

[1] The children's father is not a party to this appeal.

-1-

him. Police officers responded to the incident and observed that respondent's house was a "hoarder house" filled with "random junk" and a "fire hazard." Finally, another instance of domestic violence was alleged to have occurred when Fernald entered respondent's home uninvited and pressured her to drop criminal charges against him. When respondent refused, Fernald grabbed her face and squeezed her foot through her cast as she sat in a wheelchair.

In May 2024, the Department of Health and Human Services ("the DHHS") filed a petition requesting removal of the children from respondent and Fernald's care and requesting termination of their parental rights. The petition alleged it was contrary to the welfare of the children to remain in respondent's and Fernald's care because of an "unreasonable risk of harm due to domestic violence, unfit housing and physical neglect." The petition further detailed the parents' extensive history of CPS contact, including an emergency removal in 2017 because of physical neglect, home conditions, and domestic violence.

A preliminary hearing was held in June 2024 at which a referee found it was contrary to the welfare of the children to remain in the home and the children were placed in foster care. The referee adjourned the probable-cause portion of the hearing so that the DHHS could contact several tribes to determine whether the children had Indian heritage.[2] Both parents appealed the order removing the children. In *In re Fernald*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2025 (Docket Nos. 372395 and 372397), a panel of this Court affirmed the order removing the children from their parents' care.

After the children's removal, the DHHS filed a supplemental petition requesting that the trial court exercise jurisdiction over the minor children under MCL 712A.2(b)(1) and (b)(2); and terminate respondent's and Fernald's parental rights pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (3)(j) (reasonable likelihood that the children will be harmed if returned to the parent). Respondent made a judge demand pursuant to MCR 3.912 and an adjudication trial was held on February 11, 2025. At the trial, the trial court heard testimony from three witnesses—respondent, Fernald, and CPS Investigator Vereea Boatman. The trial court determined that it was proper to exercise jurisdiction over the minor children pursuant to MCL 712A.2(b)(1) and (b)(2) on the basis of the parents' history of domestic violence, Fernald's substance abuse history, and the family's history of previous CPS involvement. However, the trial court held that termination of respondent's and Fernald's parental rights was premature. This appeal followed.

## II. STANDARD OF REVIEW

"To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact[.]" *Id.* "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 203-204; 848 NW2d 107 (2014) (quotation marks and citation omitted). "Thus, under the clear-error standard, a reviewing court should not

---

[2] It was later determined that none of the children had Indian heritage.

substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction." *Id.* at 204 (quotation marks and citation omitted).

## III. ANALYSIS

As an initial matter, we note that respondent's argument on appeal is insufficiently briefed and unclear such that it is not apparent to this Court exactly what assertion of error she raises. Her appellate briefing refers to error in both the removal of the children and the trial court's decision to assume jurisdiction. Her citation to authority is unhelpful because her briefing includes only one substantive citation without elaboration to *In re Benavides*, 334 Mich App 162; 964 NW2d 108 (2020), for the proposition that when a child is placed in foster care "it is contrary to the welfare of the child to remain at home and reasonable efforts to prevent removal are not required." As previously noted, the children were removed on June 11, 2024, before the adjudication trial. Both respondent and Fernald have already appealed the removal of the children and a panel of this Court has affirmed the trial court's order of removal based on the extensive history of domestic violence and previous involvement with CPS. *In re Fernald*, unpub op at 1. Because a panel of this Court has already addressed removal and respondent appeals from the trial court's order assuming jurisdiction, we treat this as an appeal of the trial court's decision to assume jurisdiction over the children.

On appeal, respondent contends that the trial court clearly erred by assuming jurisdiction because Fernald was no longer in the home, which eliminated the threat of domestic violence against respondent, Fernald never abused the children, and respondent had a clean and safe home. We disagree.

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). Generally, the trial court determines whether it can take jurisdiction over the children in the adjudicative phase. *Id.* To properly exercise jurisdiction, the trial court must find, by a preponderance of the evidence, that at least one statutory basis for jurisdiction under MCL 712A.2(b) exists. *In re Miller*, 347 Mich App 420, 424; 15 NW3d 287 (2023).

The trial court in this case took jurisdiction over all four children under MCL 712A.2 which provides in relevant part:

> The court has the following authority and jurisdiction:
>
> * * *
>
> Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship . . . .

* * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in . . . . [MCL 712A.2(b)(1) and (b)(2).]

When examining whether jurisdiction exists, "the trial court must examine the child's situation at the time the petition was filed because MCL 712A.2(b) speaks in the present tense[.]" *In re Leach*, 347 Mich App 26, 32; 14 NW3d 178 (2023) (quotation marks and citation omitted; alteration in original).

Under MCL 712A.2(b)(1), the trial court assumed jurisdiction on the basis that respondent "when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals," that the children were "subject to a substantial risk of harm to [their] mental well-being," or the children were "without proper custody or guardianship." The evidence was sufficient to support the trial court's conclusion, by a preponderance of the evidence, that statutory grounds existed to exercise jurisdiction under MCL 712A.2(b)(1).

At trial, respondent acknowledged that the instances of domestic violence between her and Fernald occurred. Regarding the February 2024 incident, she testified that she and Fernald got into an altercation over a van. During the altercation, respondent attempted to stop Fernald from driving away in the van by lying on top of the hood. In response, Fernald slammed on the gas and then slammed on the brakes, causing her to fly through the air and break her legs. She also suffered an abrasion to the back of her skull. She was hospitalized for several weeks for her injuries.

Respondent further testified that while hospitalized, she spoke with a police officer and criminal charges were filed against Fernald; however, those charges were dropped and he was released from jail when she could not attend court proceedings. Likewise, respondent indicated that a personal protection order was not entered and she did not attempt to reinstate the charges. Respondent testified that Fernald returned to her home while she was still in the hospital. When respondent returned home from the hospital, she had pins in her legs and was unable to walk. She allowed Fernald to stay in the house until he could move into a friend's trailer.

Respondent testified that Fernald moved out of the house in March 2024 and that she told him he was no longer welcome in the home. Despite this, respondent testified that Fernald returned to the house in early March 2024 and attempted to take her power box and phones to sell. During the incident, Fernald leaned on respondent's broken legs, spit in her face, and threw an alcoholic beverage in her face. HIF was present during the altercation and attempted to get in between respondent and Fernald. HIF also attempted to call the police. Fernald sought to take the phone from HIF and "nudged" or "bumped" her, causing her to fall to the ground. Again, respondent testified that criminal charges against Fernald stemming from the incident were dropped because she could not get her Zoom application to work for a court appearance. Respondent acknowledged that she did not reach out to the police department to refile charges against Fernald. Following the incident between Fernald, respondent, and HIF, respondent testified that Fernald returned to the home several more times.

Addressing her relationship with Fernald, respondent testified that she experienced "periodic" and "continuing" domestic violence in her 12-year long relationship with him. She testified that he became violent when he used crack cocaine. Respondent conceded that the children witnessed "some" domestic violence, but were not afraid of Fernald. Respondent denied that Fernald had ever injured any of the children. Respondent further testified that after the incidents, the children's maternal grandfather moved into the home and helped her support the children.

Boatman testified that she investigated allegations of neglect in March 2024. As part of her investigation of respondent and Fernald, she learned that the children were removed from and then returned to respondent's care in 2017 in a case that involved allegations of domestic violence. Boatman further testified that CPS contacts with the family occurred between 2002 and 2020. In her investigation of the current case, Boatman was not permitted entry beyond the living room of the home for a home assessment. Additionally, she testified that in her investigation of the second complaint, she encountered Fernald at the home, who gave her a fake name.

Respondent argues that her testimony that Fernald moved out of the home in March 2024 and was no longer welcome in the home eliminated the threat of exposing the children to domestic violence. In a bench trial, the trial court is the finder of fact and must determine the weight and credibility of the evidence before it. See *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). Evident from its determination regarding the history of domestic violence between respondent and Fernald, the trial court found respondent's testimony incredible and, instead, found that the parents' issues with domestic violence remained unresolved. This Court gives "deference to the trial court's special opportunity to judge the credibility of the witnesses" and will not disturb credibility determinations on appeal. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). Moreover, this conclusion is supported by the record evidence. The trial court heard testimony from Boatman concerning the parents' extensive history of domestic violence and continued contacts. Specifically, Boatman testified that after CPS received the second complaint, she went to respondent's house to speak with respondent and found Fernald present. Moreover, respondent's own testimony conceded that despite the fact that Fernald ceased living in the home in March 2024, he continued to show up at the house and engage in acts of domestic violence in front of the children, which respondent downplayed at trial.[3]

The record was sufficient to allow the trial court to conclude that respondent had an extensive history of domestic violence with Fernald that necessitated police involvement and resulted in serious injury to respondent, and yet respondent continued to permit him to live in the home with her and the children. Further, the record was sufficient to establish that even when respondent told Fernald he was no longer welcome in the home, he continued to return to the home and perpetrate additional acts of domestic abuse. In at least one of these incidents, Fernald made physical contact with HIF, which caused her to fall, and all of the children witnessed acts of

---

[3] Respondent further argues that her home was clean and she was willing to permit caseworkers to evaluate the home. We need not address this argument because the trial court assumed jurisdiction on the basis of the parents' history of domestic violence and not on the allegation that her home was unclean.

domestic violence. Finally, despite the ongoing nature of the domestic violence, respondent downplayed the severity of the situation and displayed an unwillingness to separate herself from the situation by following up with the various criminal charges against Fernald that were dismissed. From this record, the trial court could properly conclude there was a substantial risk of harm to each child's well-being due to their exposure to ongoing domestic violence between their parents. We are not left with a definite and firm conviction that the trial court made a mistake in exercising jurisdiction over the children with respect to MCL 712A.2(b)(1). *In re BZ*, 264 Mich App at 295.[4]

Affirmed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick

---

[4] Because the trial court correctly exercised jurisdiction over the minor children under MCL 712A.2(b)(1), we need not consider whether jurisdiction was also appropriate under MCL 712A.2(b)(2). *In re Miller*, 347 Mich App at 424.